## The Utopia, her Engines, etc.

*(District Court, S. D. New York. March, 1883.)*

COLLISION—RULE OF DAMAGES.

A German bark, hailing from Pillau, laden with a cargo of petroleum and staves, while on a voyage from New York to Rotterdam, on September 6, 1878, came into collision with a steam-ship on the Grand Banks, in the Atlantic ocean, and the bark and cargo sank, and became a total loss. *Held*, that the rule of damage as to the loss of the bark was her market value at the time and place of her loss; that the market value of the bark at the date of her loss, at the port of New York, the port of her *departure* on the voyage in question, must be accepted as the proper valuation of the bark, as no evidence of her value, either market or otherwise, at Rotterdam, her port of *destination*, had been presented; that it was not imperative to adopt the judgment or opinion of any one or more of the witnesses, but, weighing the whole testimony, in all its parts, the commissioner was justified in *reaching a conclusion* as to such value that a jury would entertain after hearing all the facts and circumstances. *Held, also*, that the bark was entitled to recover net freight only, (*The Bark Heroine*, 1 Ben. 226;) that there must be deducted from the gross freight the expenses the bark would have incurred after the date of her loss if the voyage had been successfully performed, and which would have diminished by so much the gross freight; that the lost outfits of officers and crew were a proper item of damage.

In Admiralty.

*R. D. Benedict,* for libelants.

*H. T. Wing,* for claimants.

A reference to a commissioner was ordered to ascertain and report the damages. 1 Fed. Rep. 892. The commissioner reported as follows:

In pursuance of an order of reference, dated March 13, 1880, whereby the undersigned was directed to ascertain and compute the amount of damages sustained by the libelants, by reason of the collision in the pleadings mentioned,—

I, John A. Osborn, the undersigned commissioner, do hereby report that I have been attended by the counsel for the respective parties and by the witnesses, and have taken and examined the evidence, and do find as follows:

On the sixth day of September, 1878, on the Grand Banks in the Atlantic ocean, while on her passage from New York to Rotterdam, the German bark Helios, laden with a cargo of petroleum and staves, came in collision with the steam-ship Utopia, and was totally lost. The damages sought to be recovered by the libelants include the value of the vessel at the time of her loss, the net freight, and the personal effects of the officers and seamen constituting the crew.

As to the value of the Helios, as claimed by the libelants, there is the testimony of four witnesses taken under commission, which testimony is in the form of depositions, in answer to direct and cross-interrogatories. The witness Carl Robert Wermke values the Helios at the time of her loss, at Pillau and Koenigsberg, at 100,880 marks, equivalent to $24,009.44. There was no market value at Pillau and Koenigsberg. The witness Fritz Duetz fixes her value at Pillau at 105,000 marks, at the time of the collision, equivalent to $24,990. The witness Heinrich Hoffstadt testifies that there is no market value for vessels at Pillau, and places the value of the Helios at 28 marks per ton, exclusive of the copper sheathing, making her value at 131,-100 marks, equal to $31,201.80. The witness Gustave Benedict Fechter states there is no market price for vessels at Pillau and Koenigsberg, and values the vessel at 104,550 marks, equal to $24,-882.90.

The Helios was built in 1865–6, and cost 93,000 marks, or $22,-134. She was coppered in 1868, at a cost of $1,404, and was thoroughly repaired in the fall of 1876, at Pillau, at a cost of 27,000

marks, equal to $6,426. The range of prices of the foreign witnesses is from $24,009.44 to $31,201.80.

If the value of the bark is to be determined within the range of values as stated, then I must hold that this is a case where *market value* has no claim for consideration in the measure of damages.

There was but one case cited on the part of the libelants to sustain the rule sought to be adopted by the proof of value at Pillau or Koenigsberg. *Guibert* v. *The George Bell*, 3 FED. REP. 581. That case was decided in the Maryland district, and no similar case has been adjudicated in this district or circuit. If the facts in this case were similar to the facts in that one as to the character of the vessel,—the special purpose for which she was built,—and there was a market value at Pillau or Koenigsberg, I might venture to adopt the rule of *The George Bell;* but I fail to see the analogy.

It is well settled in this district that the rule of damages is the market value of the vessel at the time and place of her destruction. *The Baltimore*, 8 Wall. 386; *The Granite State*, 3 Wall. 313; *The Bristol*, 10 Blatchf. 539. The court held in the case of *The Baltimore*, 8 Wall. 377, that if the vessel is of a class which has a market value, such value is to be determined at the time of the collision. To arrive at such value, the doctrine laid down in the case of *The Pennsylvania*, 5 Ben. 253, 254, affords a solution of the inquiry.

The Helios was a vessel engaged in general commerce, adapted to the demands of ocean traffic, and equipped to carry merchandise anywhere on the high seas. The evidence shows that to have been her history. Proof of market value at the port of New York is abundant. One or two witnesses testified that such a vessel had a market value at the ports of Hamburg and Bremen, neither of which ports was the port of departure nor destination of the vessel. If the measure of damages for the loss of the vessel in question is to be governed by the rule stated in the case of *The Pennsylvania*, 5 Ben. 254, then I must ascertain what her *market value* was in the port of New York, as no evidence of value, either market or otherwise, at Rotterdam, her port of destination, had been presented.

It is difficult to form a judgment of the market value of the vessel at the port of New York when there is such variance of opinion by the witnesses.

I do not disregard the importance of the evidence of the foreign witnesses, for it is from their description of the bark that the majority of the witnesses in New York derive their information, upon which

they base a judgment. True, other facts and circumstances are placed along-side of the description aforesaid, which enabled some of the witnesses here to form a conclusion; but, in the main, the character of the proof is that of expert testimony.

The five witnesses called by the libelant, to give market value in New York, furnish a range of market prices from $12,000 to $15-000. The eight witnesses called by the claimants give a range of market values from $8,280 to $10,000. To give a synopsis of the testimony of each of these New York witnesses I consider unnecessary, for it is important to read their direct and cross-examination in full to judge intelligently of the force and effect of expert testimony, and, consequently, I shall not embody their evidence in formulating this, my report, in arriving at a conclusion as to value.

I do rely upon the description of the Helios, as given by the foreign witnesses, as to her age, character of construction, her being kept in thorough repair by her owners; also, being a profitable vessel, rating favorably, etc. Nevertheless, when such a vessel was in the port of New York, or on the high seas, on the sixth of September, 1878, and persons who have qualifications to judge of her value, from experience in the sale of other vessels of about the same tonnage, both of American and German nationality, and from knowledge of the cost of construction at the port of New York, I am bound in a great degree by the judgment and opinions of such persons in fixing a sum of money as an indemnity to the libelants for the loss of their vessel.

But, when the opinions of these several experts do not harmonize, and there is wide range of judgment, it is somewhat embarrassing to settle upon a fixed sum as the true value of the *res*.

Following the course of the court in the case of *The North Star*, 15 Blatchf. 532, I do not consider it imperative to adopt the judgment or opinion of any one of the witnesses, or any two or more, but, weighing the whole testimony, in all its parts, I feel justified in reaching a conclusion which a jury would entertain after hearing all the facts and circumstances. I am of the opinion that a fair market value of the Helios, on the sixth day of September, 1878, at the place of collision, taking her market value in the port of New York, was $10,000.

The gross freight for the voyage was to be $4,231.69. The libelants are entitled to recover net freight only. *The Heroine*, 1 Ben. 227.

The bark Helios left New York August 24, 1878, and was lost September 6, 1878. It is in evidence that Rotterdam is 3,600 miles from New York, and that about 1,100 miles had been gone over when the collision occurred. This took about two weeks; and the bark had 2,500 miles further to go to reach her destination. The captain, mate, and 10 sailors constituted her crew, all told. Now, allowing that it would have taken four weeks to reach Rotterdam, and allowing two weeks in port for discharging cargo and necessary delays, I conclude as follows:

Wages for men for one and one-half months, and provisions consumed:

#### WAGES.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Captain, @ $80 per month, | - | - | - | - | - | - | | $120 00 |
| Mate, @ $40 " " | - | - | - | - | - | | | 60 00 |
| 8 sailors, @ $18 " " | - | - | - | - | | $216 00 | | |
| 2 " @ $15 " " | - | - | - | - | | 45 00 | | |
| | | | | | | | | 261 00 |

#### PROVISIONS CONSUMED.

| | | | | | | |
|---|---|---|---|---|---|---|
| 10 men, @ .30 per day, (45 days,) | - | - | - | - | | 135 00 |
| 1 captain, @ $1.00 " " " | - | - | - | | | 45 00 |
| 1 mate, @ .50 " " " | - | - | - | . | | 22 50 |
| | | | | | | $643 50 |

The schedule of port charges of the bark Kate Harding (claimant's Exhibit A—1 J. A. O.) I have concluded to adopt as a fair sample of expenses that would have been incurred at Rotterdam by libelants on the voyage in question, disallowing the items therein marked with red ink, as being properly objected to by libelants.

The item, "commission for performing ship's business," at 40 cents per ton, is allowed at that rate for the tonnage of the Helios, and the objection made to full allowance, on the ground that one-half of the aforesaid commissions, as usually returned, is *overruled*, there being no evidence of custom in that respect, except upon the proof of one case.

The sum total of the items allowed on said exhibit, including commissions on ship's business, the bark being 460 tons, at 40 cents, is 1,339.68 florins, equivalent in United States money, at 40 cents, - - - - - - - - $ 535 87

The wages, cost of provisions aforesaid, and port charges to be deducted from gross freight to ascertain the net freight.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Gross freight, | - | - | - | - | - | $4,231 69 | |
| Deduct $643.50+$535,87= | - | - | - | | 1,179 37 | | |
| | | | | | | 3,052 32 | |

| | | |
|---|---:|---:|
| Outfit for captain, - - - - - - | $563 00 | |
| Outfit for mate, - - - - - - | 300 00 | |
| Ten men, $75 each, - - - - - - | 750 00 | |
| | | 1,613 00 |

RECAPITULATION.

| | | |
|---|---:|---:|
| Value of Helios, - - - - - - | $10,000 00 | |
| Interest from September 6, 1878, to February 13, 1883, | 2,661 66 | |
| | | 12,661 66 |
| Net freight, - - - - - - - | 3,052 32 | |
| Interest from September 6, 1878, to February 13, 1883, | 812 42 | |
| | | 3,864 74 |
| Outfits of officers and crew, - - - - | 1,613 00 | |
| Interest from September 6, 1878, to February 13, 1883, | 429 32 | |
| | | 2,042 32 |

The sum total of all the damages, including interest, is eighteen thousand five hundred and sixty-eight dollars and seventy-two cents, - - - - - - - - $18,568 72

All of which is respectfully submitted.

JOHN A. OSBORN,
U. S. Commissioner.

*Dated New York, February 13, 1883.*

---

Upon exceptions filed to this report of the commissioner, the same were argued before District Judge BROWN, (Southern District New York,) who, after taking them under advisement, overruled the exceptions and confirmed the report of the commissioner on March 8, 1883.