See *Kerling* v. *Cotzhausen,* 16 FED. REP. 705; *State of Illinois* v. *Chicago, B. & Q. R. Co.* Id. 706; *Adams Exp. Co.* v. *Denver & R. G. Ry. Co.* Id. 712; *Myers* v. *Union Pac. Ry. Co.* Id. 292; *Cruikshank* v. *Fourth Nat. Bank,* Id. 888; *Bates* v. *New Orleans, B. R. & V. R. Co.* Id. 294; *Ellis* v. *Norton,* Id. 4. [ED.

---

GOODYEAR and others *v.* SAWYER. (No. 126.,

*(Circuit Court, W. D. Tennessee. June 29, 1883.)*

1. COSTS—EQUITY PRACTICE—BILL DISMISSED BY PLAINTIFF—DOCKET FEE—
   WHEN TAXABLE—REV. ST. §§ 823, 824, AND 983, CONSTRUED.
       When a bill in equity is, after answer filed, dismissed by the plaintiff, on his own application, either generally or "without prejudice," the granting of such an order is a "final hearing" in the sense of Rev. St. §§ 823 and 824, and the solicitor's docket fee of $20 is then taxable as part of the costs of the case, "recoverable by law in favor of the prevailing party," in the sense of Rev. St. § 983. This results from the general law of costs in courts of equity which is adopted by this act of congress, so far as relates to the principles governing the court in the taxation of costs, as between party and party.

2. SAME SUBJECT—DISMISSAL AFTER DECREE FOR ACCOUNT AND COSTS.

Where there has been a decree for an account and costs against the defendant, but subsequently the plaintiff dismisses the bill, the docket fee is taxable in favor of the defendant, notwithstanding the former decree.

In Equity. Motion to retax costs.

This is a motion to retax the costs on execution in six cases of the plaintiffs against the several defendants, the objection in all being the charge of $20 for a docket fee to defendant's solicitor. They were bills in equity for an account of profits, injunction, etc., for the infringement of a patent. The objection urged on this motion was that there was no "final hearing," as required by the statute, to entitle the solicitor to the fee. The cases were not all disposed of alike. This case, No. 126, had been set for hearing according to the practice of the court, and was, with a number of others not involved in this motion, by the court, on application of plaintiffs' solicitor, "dismissed without prejudice, at the cost of complainant, for which costs to be herein taxed let execution issue." This was done on the regular call of the docket. In No. 146 there was a decree at the hearing on March 30, 1872, for an injunction and an account, and against the defendant for costs; but on December 30, 1872, on the plaintiffs' application, the case was, among others, dismissed by the court, by an order which recites that they "had been dismissed at the October, 1872, rules, the plaintiffs assuming all costs not previously decreed against the defendants, and that the clerk, having omitted to enter the order at the rules, it is now made *nunc pro tunc,* and is in all things confirmed." No. 145 was dismissed by the above order of December 30, 1872, but there was never in fact any other hearing on the merits, nor any account ordered, nor any decree for costs against the defendant in the case. No. 132 is said by counsel for the plaintiff to have been dismissed in the clerk's office; but the only entry of any dismissal is a docket entry, thus: "August 5, 1873. Costs paid;" and No. 158, said to have been dismissed in the clerk's office, is like the last-mentioned case, with no entry except on the docket, thus: "July 6, 1875. Clerk's and commissioner's costs paid." No. 181 is said, like the last two cases, to have been dismissed in the clerk's office; but there is not even a docket entry or anything to show the dismissal. There were answers filed in all the cases, replications in two of them, but no replications in the others. They were all set on the hearing docket, and repeatedly called and continued until disposed of as above indicated. Executions issued for costs, and this motion to retax and strike out the docket fees for the solicitor was made in all the cases.

*D. M. Scales,* for the motion.

*George Gillham, contra.*

HAMMOND, J. Until the practice of this court conforms more closely to the equity rules, and the analogies to which equity rule 90 directs us for our government, and is less influenced by the more modern

system erected by legislation for the state courts of equity, to be found in our Tennessee Code, there must be a good deal of forbearance for irregularities like those found in the conduct of these cases. There can be no doubt that a too close adherence to the technicalities of our equity practice, when they are relied on by a kind of *ex post facto* application of them, as in this case, to defeat some unforeseen result, would frequently work injustice because of the fact that there has been, under the influence mentioned, so little regard for them in the progress of these particular cases, and generally by the bar in all cases. The contention here that there can be taxed no solicitor's fee because there has been no replication filed in some of the cases, does not admit of much consideration at the hands of the court when the default is that of the party making the objection. The truth is our state Code has abolished replications in equity, and until recently, when the necessity for them in our federal practice has been emphasized, there has been a general neglect to file them, as by the plaintiffs in these cases. It does not lie with them, therefore, to say that without a replication there can be no "final hearing," and consequently no taxed docket fee.

There are other irregularities of practice relied on to defeat the docket fees in these cases that can be accounted for only by this disregard of our own, and the mistaken application of the state practice. For example, these cases have never, in fact, been set for hearing at all. Our state practice requires the clerk, as soon as answer is filed, to set all cases for hearing on the hearing docket. It has always been so done by the clerk of this court; and it may be doubted if any equity case in the court has ever been properly set for hearing according to the practice that should govern us. 2 Daniell, Ch. Pr. (5th Ed.) 964–971. The cases go to the trial docket, under the practice grown up in the clerk's office, even before answer filed, and are called term after term, and whatever is to be done is accomplished without the least regard to the technical practice.

Again, our state practice, by statutory regulation, permits a plaintiff until final decree to dismiss his bill at will, and before the clerk. Not so here. The right of the plaintiff to dismiss is not an unqualified one, and it can never be properly done in the clerk's office, except, perhaps, by force of equity rules 2 and 5 in the special case provided for in equity rule 66; and it is only, perhaps, by the court, in term-time, that any dismissal can be made, it not being one of those interlocutory steps authorized to be done in vacation or at rule-days for the preparation of a cause, but essentially a final disposition of it. Equity Rules, Nos. 1–6; 1 Daniell, Ch. Pr. 790–812; *Stevens* v. *The Railroads*, 4 FED. REP. 97.

Yet the state practice was attempted to be followed in these cases, and we have in one of them the anomaly of an attempted dismissal at rules before the clerk, even after an account had been ordered. With this constant tendency to mix state with federal practice, which

prevails in other states as well as this, and which, no doubt, influences legislators, as well as the bar and bench, it is misleading to overlook the tendency in construing statutes or adjudicating matters of practice like this now before us. I shall, therefore, treat these cases as if that were done which the parties intended to be done, namely, as having been dismissed upon the application of the plaintiffs. If proper orders have not been entered by the court to effectuate that result, it may now be done. The case of dismissal after a decree for an account is somewhat peculiar; but there is no doubt that the plaintiff may, either by consent, or without it if the defendant has no special interest to protect, procure an order to dismiss after a decree ordering an account. 1 Daniell, Ch. Pr. 793, 810, 811.

But the mistake the plaintiff makes here is to claim that because on the hearing he procured a decree for an account and for costs he is the prevailing party, and no docket fee can be taxed. That was an interlocutory decree in the sense of the practice in matters of costs, and, whatever may be its effect as to other costs, had nothing to do with the docket fee, which is to be decreed only on a "final hearing." I think, moreover, if the plaintiff dismisses after a decree for account and inquiries, the order of dismissal necessarily revokes the former decree for account and costs, and the defendant is entitled to his full costs, as when the bill is dismissed on application of the plaintiff in other cases; but it is not necessary to decide that in this case, it being clear that the judgment given for costs against the defendant by the decree for the account did not apply to the docket fee. That fee is left to the "final hearing" for allowance and taxation.

We have, then, the simple question presented whether the defendant is entitled to recover a docket fee for his solicitor, to be taxed when the plaintiff takes an order to dismiss his bill in the ordinary way, or "without prejudice." It is a question between party and party, and one arising under the law of costs as applicable to a court of equity, and not one between the attorney and his client, or the attorney and the losing party. Like the fees of the clerk or marshal, those of an attorney or solicitor are payable to him by the party for whom the services are rendered, (his client, in the case of an attorney,) but are taxable, under certain circumstances, as costs against the losing party in favor of the prevailing party at law, and as the court may direct in equity. Rev. St. § 823; *Caldwell* v. *Jackson*, 7 Cranch, 276; *Anon.* 2 Gall. 101; *In re Stover*, 1 Curt. 201; *Lessee* v. *Arbuncle*, Pet. C. C. 233; *In re U. S.* v. *Cigars*, 2 FED. REP. 494.

Of course, not all the charges of the attorney against his client were taxable as costs, but certain special items were, under the general law. In some states, notably Tennessee, this allowance of costs to attorneys never prevailed, mostly for the reason that under the practice the services usually performed by the attorney, for which the charges were taxable, were relegated to the clerk or sheriff. But in other states, as in New York, it was customary to tax attorney's

and solicitor's fees somewhat in the ·manner which has always prevailed in England. · There certain items were taxable as attorney's fees, quite as a matter of course, and others were or were not taxable according to the peculiarities of the case; the whole subject being largely regulated by statute, or the rules and practice of the court.

The rule at law was to tax them in favor of the prevailing party as a matter of right; but in equity, while this was the general rule, the court, in its discretion, governed by well-settled principles of judgment, may refuse costs, tax them against the prevailing party, divide them, enlarge the items of taxation, or otherwise regulate the allowance as it may deem just. *Trustees* v. *Greenough*, 105 U. S. 535; *Lottery Co.* v. *Clark*, 16 FED. REP. 20; *U. S.* v. *Treadwell*, 15 FED. REP. 532; *Wiegand* v. *Copeland*, 14 FED. REP. 118. And it is important to remember that, both at law and in equity, there were *interlocutory* costs and *final* costs. Those that were interlocutory were such as were allowed, taxable, and payable during the progress of the cause from time to time, as different stages were reached; and those that were final were such as were not allowable, taxable, or payable until the case had been finally determined. But in all cases the items were well ascertained, and usually were the subject of specific regulations fixing small sums for particular services of the clerk, attorney, or other officer of the court. Those that were *final* were not necessarily for services performed in and about the ceremony of trial or "final ·hearing," but were for services performed from the very commencement, all along through the case, and included all costs not strictly taxable as *interlocutory* which were comparatively less, and were limited to those that strictly belonged to the interlocutory proceeding itself.

It is not necessary to go into any more particular explanation of this distinction between interlocutory and final costs, nor those often obscure distinctions pertinent to the general subject, but not kept up under our new system, which grow out of regulations for taxing costs as between party and party simply, or between party and party *as if* between ·solicitor and client, or the summary taxation statutes designed to control the relation and the fees chargeable between the solicitor and the client, but having no necessary connection between the parties to the suit. ·

But the practice on the subject of costs as it existed when our judicial system was organized .cannot be overlooked in construing our legislation affecting the practice any more than we can ignore it in other matters of more importance, particularly since the equity rules specially refer us for analogies to the old practice in all its departments. 2 Daniell, Ch. Pr. (5th Ed.) 1376, 1378, note 1, 1379, 1395, note 6, 1398, note 4, 1410, note 4, 1434–1452; 2 Mad. Ch. 413–436; 1 Newl. Ch. 393–427; 2 Newl. Ch. 390; Beames, Eq. Costs, (20 Law Library,) 4, 85, 159, 160, 184, 214–230, 256; 2 Bac. Abr. it. "Costs," (Bouv. Ed.) 183; 2 Tidd, Pr. (3d Amer. Ed.) 945, 976;

2 Jacob's Fisher's Dig. tit. "Costs"; Weeks, Attys. 532; 20 Amer. Law Reg. (N. S.) 263.

The fallacy of the argument made here against taxing the docket fee for the solicitor consists in assuming that it is a kind of *honorarium* for the work gone through with in the ceremony of a trial at the "final hearing," and there is an unnecessary conflict of suggestion as to what amount of ceremony must be had to entitle the solicitor to this fee. It is treated as a sum allowed for a specific thing done, like, for example, the dollar allowed the clerk for issuing a writ. It is not such an allowance at all. The system of allowing small sums for specific work done is kept up as to the clerk, marshal, and commissioners, but that system as to the attorneys is abrogated, and they are allowed a lump sum for all their fees in a case, except, alone, the deposition fee, which, again, is a lump sum for each deposition, irrespective of the work done on it. It is called a "*docket*" fee, and the use of that word indicates that it is not allowed for the work of going through a "final hearing," but for all the service in a case. Too much stress has been put upon the use of the words "final hearing," as a discrimination in the character of the cases in which this docket fee is taxable and those in which it is not; and there has been a misleading adherence to a supposed analogy of construction found in the allowances prescribed for "cases at law" by the same statute.

Again, a too-isolated attention is paid to this section 824 of the Revised Statutes, in considering this docket fee, and too little attention to other parts of the same statute found at sections 823 and 983 of the Revision. Reading the whole statute together, as originally passed, and as it is found in the Revision, in the light of previous legislation and the practice under that legislation, and the law of costs at law, in equity, and in admiralty, as shown by the above-cited authorities, (as it must be read to understand it,) and it is plain that these "docket fees" in civil cases, as well as the deposition fees, are a lump sum substituted for the small "fees" allowed attorneys and solicitors under the old system, chargeable to and collectible from *their clients*, in addition to "such reasonable compensation for their services" as they may charge and receive, (Rev. St. § 823;) and that this lump sum is only taxable as costs against the losing party "*in cases where by law costs are recoverable in favor of the prevailing party.*" Rev. St. § 983. In other words, the whole general law establishing the principles upon which costs are or are not taxable as between party and party is adopted, and this statute only prescribes the items that may be taxed in the bill. And here, now, and in every equity case when the court comes to adjudge costs, it will determine what costs and to which party they are taxable; and this not alone upon two words in one section, but upon the whole statute and the general law which it adopts.

But, upon an implication based upon the use of two indefinite

words that are erroneously supposed to mean, technically, that ceremony of trial in equity which takes place when the issues are made, the proof taken, and the case is heard by the chancellor "upon its merits," we are asked to overthrow a principle in the law of costs, established, as I shall presently show, by a series of statutes, the oldest of which was enacted nearly 500 years ago, namely, that when a plaintiff makes a false clamor in court, or files a bill in chancery, and dismisses it without trial, he shall pay to the defendants *full* costs, including the fees due his attorney. And we are besought to do this when the act of congress itself requires that the costs shall be taxed "in cases where, by law, costs are recoverable in favor of the prevailing party," and only in such cases, and especially mentions the fees due the *attorney* in the same connection with those due the clerk and marshal, and requires them to be taxed by the same words it requires the fees of those officers to be taxed in cases like these. Rev. St. § 983.

Now, no book of practice or accurate writer ever describes the trial of a cause on its merits as the "final hearing." There was "a subpœna to hear judgment" and a "hearing," but it is called "*the hearing,*" not a "*final* hearing." 1 Bouv. Dict. tit. "Hearing;" 2 Daniell, Ch. Pr. 967–986. Demurrers are "heard," and pleas are set down for "hearing" or argument, and exceptions to reports are set for "hearing," etc.; but the trial on the merits is "*the* hearing." It may or may not be the *final* hearing, for after it there often come other hearings, such as exceptions to the master's report, often more important and formidable than the other hearings, or on further applications for instructions, etc.; so that, strictly speaking, the "final hearing" is the *last* hearing. At least, it cannot be accurately applied to the trial on bill and answer, or on bill, answer, replication, and proof, and confined to that. But the distinction between *final* costs and *interlocutory* costs was well established, and may well be supposed to have been in the minds of the legislature when dealing with the subject of costs. The former are awarded, not necessarily, nor always properly, though possibly they are generally, by the decree made at the hearing, "upon the bill, answer, replication, proofs, and former proceedings had," as the formula goes, for a decree "on the merits," as it is called at the bar, and in common parlance. The "final" costs may be, and should be, reserved until the very end of the case, which often comes after "the hearing," when the matter of costs is "finally" disposed of by the court. As an illustration of this distinction, the familiar test of a final decree may be referred to, for it is often said that a decree is final which adjudges costs.

It is to be observed that the statute uses the words "*on* final hearing," not "*for* final hearing;" "*on* a trial by jury," not "*for* a trial by jury;" "*when* judgment is rendered without a jury," not *for* a judgment so rendered; and "*when* a cause is discontinued," not *for* the discontinuance. But subsequently the phraseology is changed, and

we have *for* scire facias, *for* each deposition, *for* services rendered in appeal cases, etc. This shows that the docket fee is general, *and the time when it may be taxable* is designed to be expressed as "*on* the final hearing," and not a charge for services then and there rendered. Rev. St. § 824.

Indeed, this act of congress intends only, by such phraseology, to prohibit *interlocutory* costs to be taxed for fees paid to attorneys, solicitors, and proctors, as, but for the statute, they might be. It does not prohibit interlocutory costs to be taxed and paid for services of clerks, marshals, and commissioners, and it is the constant practice to allow them, on continuances, the overruling of demurrers, hearings on the sufficiency of pleas, etc. But as to his attorneys, solicitors, and proctors, the prevailing party must await the *final decree as to costs*—and this is not necessarily that decree made at the hearing on the merits, for often the decree for costs comes long after that—and then take a lump sum for all the services. If his case be at law, and there has been a jury trial, $20; if a judgment without a jury, $10; and if a discontinuance, $5. If his case be in admiralty (except in a special case mentioned in the proviso) or equity, always $20, whenever the case is "finally heard" *as to costs.* There is, by this construction, no distinction between cases at law or in equity as to the rule that only *final* and no *interlocutory* costs shall be allowed for the attorney. They are all alike in respect of this, but for obvious reasons there are graded fees allowed by the statute in law cases, and one sum in equity or admiralty cases, and this because of the comparative differences in the labor of preparation. There could be no reason for allowing a fee of $5 to be taxed when a lawsuit is discontinued, and none when a bill in equity is dismissed; but good reason for allowing $5 in the one case and $20 in the other, if we take into view the mere worth of the service. But when we consider the rules of law which regulate both courts, as old as the law itself, and that section 983 of the Revision adopts those rules in the plainest terms, and construe the whole statute together in the light of the law of costs applicable to the two cases, and remember the excess of professional labor in equity over law cases, the reason of the distinction in amount and the necessity of no distinction in the principle of taxation at once appear. The whole statute then becomes consistent in all things, and aligns itself completely with well-established principles, which are found in the law of costs as the product of a most wise and intelligent system of legislation, as venerable and binding as any known to our jurisprudence.

At common law—that is, the most ancient common law—costs were not known, but the plaintiff who made a false clamor, and either failed to try his case, or, trying it, failed to sustain it, was amerced heavily, and the fine went to the king as a penalty for his invasion of a court of justice. It was the same if he took a nonsuit. 17 Amer. Law Reg. (N. S.) 693, and authorities above cited.

I shall not take space to trace the legislation for courts of law which, from the earliest statutes of Marlbridge (A. D. 1267) and Gloucester, (A. D. 1278,) will be found a complete parallel to the legislation I am about to cite in respect to costs in equity, and which, by constantly increasing severity, sought to discourage false suits by giving a *defendant* full costs against a plaintiff who failed in his action, and was especially severe on one who discontinued his suit, or was nonsuited for his own default without a trial; these costs *to the defendant* taking the place of the former fine to the king. 2 Tidd, Prac. 976 *et seq.*; 2 Bl. Comm. 439; 3 Bl. Comm. 188, 357, 399, 451; 17 Amer. Law Reg. 693.

Mr. Beames, who wrote a little before our equity rules were promulgated of the practice as it was then understood, gives an intelligible account of the general principles on which a court of equity acts in giving or withholding costs; and according to these principles, as I have endeavored to show, we are bound to determine the questions on this motion, for it is now for the court to decide whether these defendants are entitled to have costs, and if so, what costs, taxed as "recoverable by law" in favor of the prevailing party, for sums presumably already paid by them to the clerk, marshal, and solicitor, or for which they are liable to these persons. Rev. St. § 983.

It is within the discretion of the court to give or withhold them on either side, or to give some and withhold others, or to divide them, not arbitrarily, but according to the practice known to courts of equity and found in the authorities on the subject. This author tells us that the statute of 17 Richard II. *c.* 6, (A. D. 1394,) was the very foundation of costs in equity, and it enacts:

"Forasmuch as people be compelled to come before the king's council, or in the chancery, by writs grounded upon untrue suggestions that the chancellor for the time being, presently after that such suggestions *be duly found and proven untrue,* shall have power to ordain and award damages according to his discretion to him which is so troubled unduly, as before is said." Beames, Eq. Costs, 4.

It is noticeable that the very question we have in this case arose on this statute, and Lord Coke gave it as his opinion, citing some decisions in the Year Books, that, on the strength of the words italicized in the above extract, costs were not taxable unless the case *was tried,* and therefore were not recoverable upon dismissal or demurrer. Beames, Ch. Costs, 6, and note; 2 Comyn, Dig. 426, "Costs." Subsequently Lord Hardwicke refused to recognize the force of this construction, or that the powers of the court were limited by this statute, and claimed that always and without its authority the court, "from conscience and *arbitrio boni viri,* as to satisfaction on one side or other, on account of *vexation,*" decreed costs. Id. 8; *Burford* v. *Lenthall,* 2 Atk. 551.

The statute of 15 Henry VI. *c. 4,* recited that "divers persons were

greatly vexed and grieved by writs of *subpœna*," and enacted that "surety be found to satisfy the party so grieved and vexed, for his damages and expenses, if so be that the matter cannot be made good which is contained in the bill." Beames, Ch. Costs, 7. Owing to the construction of the earlier statutes above mentioned, costs were not taxable on dismissal except at 40 shillings, unless by special order for further allowances in particular cases, until the statute of 4 Anne, *c.* 16, § 23, (A. D. 1706,) "for preventing vexatious suits in courts of equity," which enacted "that upon the plaintiff's dismissing his own bill, or the defendant's dismissing the same for want of prosecution, the plaintiff in such suit shall pay to the defendant or defendants his or their *full* costs, to be taxed by a master." Beames, Ch. Costs, 85. This act not applying in terms to a dismissal at the hearing, the plaintiffs, in order to evade the effect of this legislative provision, adopted the plan of setting the case down for hearing on bill and answer, and then having the bill dismissed with 40 shillings costs; whereupon, on April 27, 1748, Lord HARDWICKE made a rule of court which declares "that when any cause shall be brought to a hearing on bill and answer, and such bill be dismissed, this court may and is at liberty to direct and order such dismission to be either with 40 shillings costs, or with costs to be taxed by a master, or without costs, as the court, upon the nature and merits of the case, shall think fit." Beames, Ch. Costs, 86.

This author, in other places above referred to, shows conclusively that everything was done, by legislation and by the practice of the court, to give a defendant *full* costs when the plaintiff dismissed his bill; and this legislation was continued to the latest statutes long after he wrote, as will be seen by reference to the other writers above cited.

Now I cannot think that upon an implication based on what I have endeavored to show was a somewhat loose and untechnical use of two words—"final hearing"—in fixing the *amounts* to be taxed as costs, we are to repeal all this legislation which is a part of that law to which section 983 of the Revised Statutes and equity rule 90 refer us for the principles upon which we are to proceed "where by law costs are recoverable in favor of the prevailing party." It is contrary to all the canons of construction to do this, and is merely sticking in the bark of one phrase used in the statute to the neglect of the rest of it.

A plaintiff, as will appear by the authorities cited, cannot dismiss his bill without a hearing by the court, nor without its order. This is especially so when he asks to dismiss "without prejudice," as was done in some of these cases. And, while it is quite a matter of course to grant the order, it is not absolutely so, and it will not be done where the defendant has acquired the right to object. *Stevens* v. *The Railroads*, 4 FED. REP. 97; *Booth* v. *Leycester*, 1 Keene, 247; S. C. 15 Eng. Ch. 247; 1 Daniell, Ch. Pr. 790. The passing of this order is done on a "hearing," to all intents and purposes, and it is a "final"

hearing in any proper use of that term. The great controversy has been whether such a dismissal, where there is no reservation of a right to sue again by taking the order "without prejudice," is a bar to a second suit. Under the old law it probably was not, but this is not certain; and by a comparatively recent order of court (promulgated A. D. 1852, since our equity rules) it is declared that whenever a party voluntarily dismisses his bill it shall have, without an order to the contrary, all the force and effect of a determination on the merits. This settled the controversy on the subject in a way that is wise and just, whether binding on us or not. *Stevens* v. *The Railroads, supra.* I refer to this to show that, in the state of the law on this point, it is by no means certain that congress, when it used the words "final hearing," did not intend to provide as much for cases dismissed like these as for cases dismissed *in invito* at the hearing.

Until this act of 1853 our own legislation was quite barren on the subject of costs. It is not necessary to go into it at length for that reason. Its general effect is stated in the cases of *The Baltimore*, 8 Wall. 377, 391; *Costs in Civil Cases*, 1 Blatchf. 652; *District Attorney's Fees*, Id. 647; *The Liverpool Packet*, 2 Spr. 37; *Hathaway* v. *Roach*, 2 Wood. & M. 63; *Jerman* v. *Stewart*, 12 FED. REP. 271, and other cases there cited.

The general result was that, except during a short time of temporary statutes making partial regulations, and some statutes applying to special cases, the federal courts were left to follow the state practice in cases at law, and the general equity practice in cases in that court until this act of 1853 was passed. One of these temporary statutes is, however, of great value in support of the views here .expressed. Mr. Justice NELSON says that long after it expired it continued, without objection, to govern the taxation of costs, until the act of 1853 was passed. It was, no doubt, the model used in constructing the act of 1853. Its first sections were confined to regulating costs in admiralty cases. The "counselor or attorney" was allowed "the stated fee *for* drawing and exhibiting libel, etc., *in* each cause three dollars; drawing interrogatories three dollars; and all other services *in* any one cause three dollars."

It then proceeded to enact:

"Sec. 4. That there be allowed and taxed in the supreme, circuit, and district courts of the United States, *in favor of the parties obtaining judgments therein,* such compensation for their travel and attendance *and for attorney's and counselor's fees,* except in the district courts of admiralty and maritime jurisdiction, as are allowed in the supreme or superior courts of the respective states." Act 1793, c. 20, § 4, (1 St. at Large, 333;) Act 1796, c. 11, (Id. 451.)

The act of 1853 was intended, in my judgment, to express precisely what this section of the act of 1793 enacted as to attorney's and counselor's fees, but to fix the amounts in all cases of law, equity, and admiralty, to confine its operation to *final* costs, and exclude any

allowance for attorney's fees on *interlocutory* judgments; and left the principles of taxation to be governed by the law of costs as understood in courts of law, equity, and admiralty, respectively. Act 1853, *c.* 80, (10 St. 161.)

It must be conceded that the act is, in respect of the fees for attorneys, somewhat obscure, and the decisions have not been uniform. In *Peterson's Ex'rs* v. *Ball,* 1 Cranch, C. C. 571, (A. D. 1809,) when, however, the act of 1796, above referred to, had expired, it was held that where a bill was dismissed after answer filed, a lawyer's fee should be taxed. The court cites a Virginia statute, the effect of which I cannot ascertain. In *Dedekam* v. *Vose,* 3 Blatchf. 77, (S. C. Id. 153,) it was held that the attorney's fee could not be allowed upon *interlocutory* or collateral proceedings, and only upon an actual contestation of the case upon the merits, and that it could not be taxed twice in the same case,—first on final decree against the principal, and afterwards on another decree against the sureties. Nor can it be taxed more than once when a case has been twice heard, as before and after appeal. *Troy Factory* v. *Corning,* 7 Blatchf. 16.

In *Hayford* v. *Griffiths,* 3 Blatchf. 79, an appeal in admiralty was dismissed before the hearing, but on motion of the adverse party, and it was held the docket fee was taxable "on a final disposition of a cause on the calendar," which is precisely the ruling I make in these cases. There was no "hearing" in any sense in which these cases were not heard; certainly not any "final hearing" except in the same sense these cases were finally heard.

In *Goodyear* v. *Osgood,* 13 O. G. 325, it was held that "wherever a final decree is entered by the court in an equity cause, *after replication filed,* for the purposes of taxation of the docket fee this is to be considered as the 'final hearing' referred to in the Revised Statutes, § 824." The cases were dismissed on motion of the complainants after an interlocutory decree in another case settling the rights of the parties. As I understand the case, it supports the ruling made here, since the replications in these cases are, for reasons already stated, considered as filed; and the disposition made of that ruling of Judge SHEPLEY's by the adverse case of *Coy* v. *Perkins,* 13 FED. REP. 111, is not quite satisfactory. It certainly cannot be material what motive influenced the plaintiff to dismiss,—whether because of an interlocutory decree in another case, or for other reasons. If he dismissed voluntarily, as he certainly did in the two cases mentioned in the report of the facts, which were not included in the stipulation as to the case against Davis in which the interlocutory decree was rendered, there was no "final hearing" as those words are interpreted in *Coy* v. *Perkins, supra.*

The construction placed on the opinion in *Goodyear* v. *Osgood, supra,* by *Coy* v. *Perkins, supra,* seems to be that if the plaintiff dismisses because he concludes for himself he cannot succeed, the docket fee is not taxable; but if the court has convinced him by an *interlocutory*

decree in another case—to abide which he is not bound by any stipulation—that he cannot succeed, the docket fee is taxable. But Judge SHEPLEY does not, I think, place his judgment on that ground. In addition to what has been already quoted he says: "In the taxation of costs final hearing is to be considered as the submission of a cause in equity for the determination of the court, so that the case may be finally disposed of upon bill and answer, or bill, answer, and replication, or upon pleadings and proofs, *or otherwise after the case is at issue.*" He evidently regards any dismissal on the plaintiff's application *after issue* as a "final hearing." It illustrates the confusion in which we are involved when we undertake to interpret "final hearing" by the factitious circumstances attending the disposition of the particular case, and when we must inquire into the motives with which a plaintiff is actuated when he makes his motion to dismiss his own case.

The opinion by Mr. Justice CLIFFORD mentioned in the report of *Goodyear* v. *Osgood, supra,* and in *Coy* v. *Perkins, supra,* was oral, and has never been, the clerk at Boston informs me, reported. We cannot say on what reasoning he ruled, nor precisely the state of the case. It only appears that the bill was dismissed "by agreement of parties, with costs," and he held the docket fee not taxable.

In *The Bay City,* 3 FED. REP. 47, the fee was held taxable on a dismissal in admiralty after proof commenced, but without any judgment by the court. There the accidental circumstance that proof had been heard constituted "a final hearing," but the court cited *Hayford* v. *Griffiths, supra,* somewhat approvingly. In *Strafer* v. *Carr,* 6 FED. REP. 466, and in *Huntress* v. *Epsom,* 15 FED. REP. 732, it was held that when there was more than one "trial before a jury" only one docket fee is taxable, because, as was said by Judge SWING, until there is a verdict and judgment the case is not finally disposed of, and it is only on such a disposition that the right to tax this item of costs accrues. In other words, *interlocutory* costs for the attorney's docket fee are not allowed; yet, on the strict letter of the statute, there was "a trial before the jury," even where there was no verdict; but it was held upon the whole statute that one fee only is to be taxed, and this on the final disposition of the case. The learned judge says the fee is not given "in proportion to the labor performed," and it seems to be introducing a very uncertain element of construction into the statute, to cast about and see what was done in each case, and the character of the performance, in order to determine whether there was a final hearing or not. It would impose on the taxing officer the necessity of taking proof *aliunde* the record to see how much of a hearing there was, what counsel did, and what the court did, and such other matters of fact as would enable him to determine whether there was a "final hearing;" and in the end, as the adjudicated cases show, there would be great disagreement as to what constituted a "final hearing," and the effect of varying circumstances on the question.

But in *Schmieder* v. *Barney,* 7 FED. REP. 451, *per contra,* it was held that where there was in the same case more than one "trial before a jury" a docket fee was taxable for each trial. In *Osborn* v. *Osborn,* 5 FED. REP. 389, there was no question of costs, but the words "final hearing," as used in the removal acts, were construed not to include an equity case where the evidence was heard and case submitted on questions of fact to a jury, but the jury disagreed. Yet in some of the cases on this statute as to costs this would be held conclusive evidence that there was a "final hearing," although the plaintiff voluntarily dismissed before the court could decree against him. In *The Alert,* 15 FED. REP. 620, on the same construction which I have placed on *Hayford* v. *Griffiths, supra,* it was held in a proceeding *in rem,* where the vessel was arrested and the case entered on the docket, but subsequently dismissed on application of the libelant on payment of costs, that this was a "final hearing." It was there said that the ground of the decision is that "granting an order which disposed of the cause was a final hearing," and that whenever an order of the court is necessary to dispose of the case, the hearing thereon is deemed to be a "final hearing." This seems to me to be the only just construction of the statute, and relieves us of that uncertainty before pointed out which arises when we depart from it.

The cases of *Coy* v. *Perkins, supra,* and *Yale Lock Co.* v. *Colvin,* 14 FED. REP. 269, are directly opposed to these views, and hold that where the plaintiff voluntarily dismisses his bill this docket fee is not taxable; but I am constrained, for the reasons given, to respectfully dissent from that ruling, and adopt that made in the other cases which have been cited holding the fee taxable.

This conflicting and indecisive attitude of the adjudged cases, and the fact that the question has often troubled the taxing officers of this court, induced me to take the first occasion when it has been presented here for judicial decision to give the subject a careful investigation, and this must be my apology for the undue length of this opinion.

Nothing less than a conviction, founded on thorough consideration, would justify my judicial judgment when it dissents from any of my brethren who have adjudicated the question.

Overrule the motion.