## THE ONEIDA.

## SUMMERS v. THE ONEIDA.

### (District Court, D. West Virginia. January 3, 1898.)

1. COLLISION—STEAMBOATS RACING—MUTUAL FAULT.

The steamer C. C. Martin and the steamer Oneida were racing in the Little Kanawha river, running side by side, the steamer C. C. Martin being near the shore, and while so running the Martin ran against the river bank, and was wrecked. *Held*, that the officers of both boats were guilty of negligence, and the owner of the wrecked vessel is entitled to recover one-half of the damages and one-half of the costs of the proceedings.

2. SAME—DAMAGE.

The owner of the C. C. Martin in good faith expended $968.35 in endeavoring to ascertain the extent of the injury to the steamer C. C. Martin. *Held*, that he was entitled to recover, upon the grounds of mutual fault, one-half of the amount so expended.

This was a libel in rem by John S. Summers, owner of the steamer C. C. Martin, against the steamer Oneida, to recover damages alleged to have been caused by a collision between the two boats in the Little Kanawha river. On June 25, 1897, the cause was heard upon its merits, and the court delivered an oral opinion finding that the collision grew out of racing, and occurred while the boats were running side by side; and that the Martin, being nearer the bank, was driven against it by the collision, and sunk. The court found that both boats were in fault, and decreed that the libelant recover one-half the damages sustained by the Martin, together with one-half the costs. The cause was then referred to a master to ascertain and report the total damages sustained by the libelant by reason of the collision. The master having filed his report, the cause is now heard on exceptions thereto.

V. B. Archer, for libelant.

Van Winkle & Ambler and John J. Davis, for claimant.

JACKSON, District Judge. This cause was heard before me upon its merits on the 25th day of June, 1897, at which time a decree was entered holding that the officers in charge of the steamer Martin and of the steamer Oneida were mutually at fault, and that the costs of the suit, and the damages arising out of the injury complained of in the libel, should be equally divided between the libelant and claimant. At the same time the court directed a reference to a master commissioner to ascertain and report to the court the total damages sustained by the libelant by reason of the collision, as well as whether there was total loss of the steamer Martin, and, if so, its value. The master having filed his report in response to the decree

entered on the 25th day of June, 1897, the cause now is heard upon the exceptions to the master's report.

The exceptions as to the value of the Martin, found by the master, will be overruled. Whatever might have been the impression of this court as to the value of that vessel as an original question, still, the court having made an order of reference to the master, who has examined a large amount of evidence in the cause, and filed his conclusions as to its value, is not disposed to disturb that report, unless it is clearly in conflict with the weight of the evidence in the case.

There is a wide margin of difference between the witnesses who testified as to the value of the vessel, the highest fixing its value at the sum of $6,000, and some as low as $1,000. The commissioner basis his estimate upon the fact that there had been a bona fide offer of $3,100 made for the vessel a short time previous to the collision, and that subsequent to that offer there was considerable money expended upon the boat to keep her in repair. It appears from the evidence that the boat was actually sold at public auction, in 1894, for $2,410, and that subsequent to that date about $1,700 of permanent improvements were placed upon her by her owners. Discarding what appear to be the extreme and extravagant opinions as to the value of the boat, the commissioner finds that the boat was a total loss, and that it was worth about $3,100 basing his conclusions upon the evidence of those who were best acquainted with the boat and its market value at the time of the collision. I am of the opinion that the weight of evidence sustains the commissioner in his conclusions that the boat was a total loss, and that its value was $3,100. I am not, therefore, disposed to disturb the conclusions reached by him.

The fifth and sixth exceptions to the master's report refer to the allowance by the master of $968.35 as the amount expended by the owners of the Martin in attempting to raise her, with the view of ascertaining what might be saved from the wreck. The Martin was not insured, and it was clearly the duty of the owners of the vessel either to make an effort to save the boat and its machinery, or to notify the owners of the Oneida that they had abandoned the Martin as a total wreck, and that its owners held the owners of the Oneida responsible, in order that they might take charge of the sunken vessel with the view to ascertaining the liability of the Oneida arising out of the collision. It is apparent from the pleadings and the evidence that the Oneida claimed that she was in no wise at fault, and therefore no responsibility attached to her for the collision. It therefore became incumbent upon the owners of the Martin to make an effort to save, if possible, something from the wreck of the sunken vessel. This they did, and incurred an expense of $968.35.

The supreme court in the case of The Baltimore, 8 Wall. 386, in an opinion delivered by Justice Clifford, who was an admiralty judge of great experience, held that "restitution or compensation is the rule in all cases where repairs are practicable, but, if the vessel of

the libelant is a total loss, the rule of damage is the market value of the vessel." It could not be determined, without an effort to raise the vessel, whether it was a total loss. The effort to raise her was for the mutual interest of both parties, as the court had held in this case that there was a mutual fault and a divided responsibility. In the case of The Venus, 17 Fed. 926, Judge Brown held that "the ordinary rule would not admit of a recovery beyond the amount of a total loss; that is, the full value of the vessel at the time it was sunk. To this," he says, however, "may plainly be added the cost of raising the boat, when that is necessary, in order to ascertain whether she should be abandoned as a total loss or repaired."

The extent of the liability of the owners of the Oneida could not be determined until there was an effort made to reclaim the boat. It is apparent that this effort was made in good faith, and the commissioner so finds. The only question in my mind is whether I should refuse to allow the libelants, the owners of the Martin, the full amount expended in an effort to raise and reclaim the boat, and its engines, tackle, etc. I have held that this is a mutual fault and a divided responsibility. I have also decided that it was the duty of the owners of the Martin to make an effort to raise the boat, and to reclaim anything that could be saved from the wreck. They elected to this, and in this respect strictly complied with what was clearly their duty under the circumstances. Taking this view of the case, I am of the opinion that the respondents, the owners of the Oneida, are justly chargeable with one half of the expense of the effort to raise this boat, and that the owners of the Martin are chargeable with the other half. For the reasons assigned I overrule the fifth and sixth exceptions to the master's report, so far as it charges the Oneida with the whole amount of the cost and expense of the attempt to raise the Martin, and make them only liable for one-half of it.

A decree in this case will be drawn fixing the value of the boat at the time of her loss at $3,100, dividing that amount equally between the owners of the Martin and the owners of the Oneida; and also fixing the amount expended by the owners of the Martin to raise and reclaim the boat at the sum of $968.35, which is also to be divided equally between the owners of the two boats; and that the costs will be taxed and equally divided between the parties, either party getting credit for any portion of the costs that they have already paid, pending this litigation, which the clerk of the court will credit the party with upon producing proper vouchers for the same.

The exceptions taken by the libelant's counsel as to the allowance to be made to the watchman is sustained, and, in lieu of an allowance of $2 a day, the court allows $1.50 a day.