## THE BALTIMORE.

1. *Restitutio in integrum* is the leading maxim as to the measure of damages in cases of libel in admiralty, for injury to vessels, for collision: in other words, where repairs are practicable, the general rule is, that the damages shall be sufficient to restore the injured vessel to the condition in which she was at the time the collision occurred. And this rule does not allow deduction, as in insurance cases, for the new materials furnished in the place of the old.

2. Although, if a vessel be sunk by collision in so deep water, or otherwise so sunk, that she cannot be raised and repaired, except at an expense equal, to or greater than the sum which she would be worth when repaired, the rule cannot apply, still the mere fact that a vessel is sunk is not, of itself, sufficient to show that the loss is total, nor to justify the master and owner in abandoning her and her cargo.

3. Courts of admiralty cannot properly allow counsel fees to the counsel of a gaining side in admiralty, as an incident to the judgment, beyond the costs and fees allowed by statute. Under the statute now regulating the fees of attorneys, solicitors, and proctors (the statute, namely, of 26th February, 1853, 10 Stat. at Large, 161), a docket fee of twenty dollars may be taxed, on a final hearing in admiralty, if the libellant recover fifty dollars, but, if he recovers less than fifty dollars, only ten.

THE schooner Woolston, with a cargo of coal, and the steamer Baltimore, collided in the Potomac, on the 16th of December, 1863, and the schooner and her cargo sank. · The owners of the schooner accordingly libelled the steamer in the Admiralty Court of the District. The libel averred that the collision had been caused wholly by the steamer's fault, and that the schooner had sunk in such deep water as to make both her and her cargo a total loss, since the cost of raising either, or both, would be greater than its or their value.

These allegations, both as to the fault and the total loss, the answer explicitly denied. The testimony as to the question of fault, need not be stated, since it appeared that a part of it was given below, was not in the record sent to this court, and the court therefore did not pass at all upon the merits. On the other matter, the matter of total loss, it rather showed that the water in which the schooner went down, was not so deep but that her masts were visible eighteen feet above the water, and that her position, as she lay, was clearly discernible.

No proof was given of the fact of a total loss, further than that the vessel sunk.

The court, regarding the steamer as in fault, entered a decree for the libellants, and, upon the report of a commissioner, decreed, as damages, notwithstanding exceptions by the respondents, the full value of the schooner and cargo, at the time of the collision, and awarded to the libellant's

counsel $500 as a fee.   This decree having been affirmed by the Supreme Court in general term, the case was now here on appeal.

*Mr. Ashton, for the appellant :*

I.  The most palpable error in law of the court below, and one considerable, as respects amounts, relates to the assessment of damages.

The true measure of the damages, in this case, was the expense of raising and repairing the vessel, so as to make her equal to the value before the collision, and the expense of raising the cargo, and the amount of any deterioration which it might have undergone in consequence of the sinking.

Mr. Justice Grier, in a collision case in the third circuit,* forcibly observes :

" This is not the first instance in which I have had to notice that where one vessel has been so unfortunate as to come into collision with another, the parties injured suppose that the insurance doctrine of *abandonment* will apply to their case, and they may, therefore, increase the damages by their own neglect. We are all wise after the event, and if a judge can point out how the accident might have been avoided, the unfortunate party is condemned to pay the damage.   But this amount cannot be increased by the negligence or folly of the injured party.   *The only measure of damages is the amount it would cost to repair the damage, with some allowance for demurrage.*"

In that case, the District Court had allowed the difference between the value of the vessel, before the collision, and the amount realized by the owners by a sale of the hull, after the collision.   The decree was reversed by the Circuit Court, and the amount which it would have cost to repair the vessel was alone allowed.

This principle was directly adjudged to be the correct one by this court, in the case of *The Catharine,*† where the court said, that in a case of a vessel sunk by a collision, the inquiry

---

* The Harriet Rogers, A. D. 1867, 3 Wallace, Jr.
† 17 Howard, 174 ; and see Williamson *v.* Barrett, 13 Id. 101.

to be made is, as to the practicability of raising the vessel and cargo, and repairing the former, and that the expense attendant thereon is the principal ingredient of the damage proper to be allowed. The court, in that case, condemn the principle which governed the court below in the present case, in respect to the damages; that is, that the owners of the schooner had a right to abandon her as a *total loss*, and look to the steamer for compensation. With this authority, there is no use of discussing further the law.

The libel here alleged a *total loss*. The answer denied it. There was no evidence before the court on the point. It was not proved; and yet the court, without evidence, gave the full damages claimed. But this is not all. All the evidence in the case shows that the vessel probably, and the cargo certainly, which was coal, might have been raised.

Numerous witnesses for the libellants spoke of having seen the masts, recognizing their color, and also of having seen sails of the schooner above water, as late as June, 1864, the collision having occurred in December, 1863.

No effort was made by the libellants to raise either vessel or cargo; and no proof given to show that this was impossible, or that the cost would have been greater than their value. Of course, the coal could have been taken out without much expense.

For these reasons alone, the decree should be reversed, and the case remanded for an inquiry as to the actual damage sustained, according to the legal principles heretofore applied by this court.

[The counsel then went into an argument on the merits, unnecessary to be reported, as the judgment here was given on an assumption made for this hearing alone, that on this point the decree was correct.]

II. The counsel fee was, perhaps, not warranted by any statute, or entirely correct practice. But the error, as to the measure of damages, is the error which we insist on.

*Messrs. Williams and Fendall, contra,* contended,

I. That while, of course, this court now had, under any

circumstances, the right to review on appeal, cases in admiralty, and to reverse decrees of the Circuit Court upon them, yet that the decree of the judge who heard the cause in the first instance having been in favor of libellants, and that decree having been affirmed by a full court at the General Term, and testimony supporting their decision, the decree would not be reversed on mere doubts raised here.*

II. That the vessel was sunk in so deep water that nothing but the top of her masts could, even by the testimony of the libellant's witnesses, be seen; and that, under those circumstances, she was so far worthless, as that she might be properly abandoned to the wrongdoers who struck and sunk her; that such parties had no right to call on the injured party to undertake a task desperate, or nearly so.†

III. That the allowance for fees to counsel in admiralty was correct, as was decided both in *The Apollon*,‡ and in *Canter* v. *The Ocean Insurance Company*.§

Mr. Justice CLIFFORD delivered the opinion of the court.

Cases of admiralty and maritime jurisdiction, since the passage of the act of the 3d of March, 1803, cannot be brought here for re-examination in any other mode than by appeal; and the provision is, " that upon such appeal, a transcript of the libel, answer, depositions, and all other proceedings, of what kind soever in the cause, shall be transmitted to" this court. Prior to that time, the judgments and decrees of the Circuit Courts in civil actions and suits in equity, whether brought there by original process, or transferred there from the courts of the several States, or from the District Courts, could only be removed into this court for revision by writ of error; and the further provision was, that there should be no reversal in this court for any error in fact, which still continues to be the rule of law in respect to all cases brought here from the Circuit Courts by writs of error.

---

* Newell *v.* Norton, 3 Wallace, 267; The Hypodame, 6 Id. 223.

† The Columbus, 3 W. Robinson, 158; The Eugenie, 1 Lushington, 139.

‡ 9 Wheaton, 362.                              § 3 Peters, 307.

Power to reverse for error, in fact, any judgment or decree of a Circuit Court brought here for revision, being absolutely prohibited, it became necessary to prescribe some mode by which the facts in equity suits and in cases of admiralty and maritime jurisdiction should be ascertained and embodied in the record, and it was accordingly provided in the 19th section of the Judiciary Act, that it should be the duty of the Circuit Courts in such cases to cause the facts on which they founded their sentence or decree fully to appear upon the record in some one of the modes therein described, and while that provision remained in force this court had no more right to re-examine the facts found in such a case than the court possesses in a common law suit where the facts are found by the verdict of a jury.*

Appeals, however, are now allowed to this court by the amendatory act, in all such cases where the matter in dispute, exclusive of costs, exceeds the sum or value of $2000, and so much of the 19th section of the Judiciary Act as provided for the finding of the facts in the Circuit Court, and so much of the 20th section of the same act as provided that such cases should be removed into this court by writs of error, are repealed.

Viewed in the light of the repealing clause in that act, and the requirement that the transcript shall embrace the depositions as well as the pleadings and proceedings in the case, it is evident that Congress intended that this court shall hear and determine the whole merits of the controversy. Provision is also made by that act, that new evidence may be received by this court, in admiralty and prize causes, which shows to a demonstration that the facts, as well as the law of the case, are open to revision on the appeal.

Where the appeal involves a question of fact, the burden is on the appellant to show that the decree in the subordinate court is erroneous, but it is a mistake to suppose that this court will not re-examine the whole testimony in the case, as the express requirement of the act of Congress is, that

---

* 1 Stat. at Large, 84; 2 Id. 244.

the Supreme Court shall "hear and determine such appeals," and it is as much the duty of the court to reverse the decree from which the appeal is taken for error of fact, if clearly established, as for error of law.

Appeal was taken in this case from the decree of the Supreme Court of the District affirming the decree of the District Court, sitting as a court of admiralty in a cause of collision, civil and maritime.

By the transcript, it appears that the owners of the schooner J. W. Woolston filed a libel *in rem* against the steamer Baltimore, her engine, machinery, boats, apparel, tackle, and furniture, claiming damages as for a total loss of the schooner and her cargo, consisting of two hundred tons of coal, and also for the loss of the freight on the cargo, and for the loss of the equipment of the schooner.

Bound on a voyage from Philadelphia to the port of Washington, the schooner, when the collision occurred, was coming up the river Potomac towards her port of destination. Though cloudy, the night was not very dark, and the schooner had a light at her bow, under the jib-boom, and she had two good lookouts properly stationed in the forward part of the vessel. She was steering west-northwest, with all her sails set, and was proceeding safely on her voyage up the river under a good breeze, when the lookouts descried the steamer heading in a southeasterly direction and coming down the river, and the charge in the libel is, that the steamer, when she was not more than three hundred yards from the schooner, suddenly changed her course, came down on the schooner, and struck her near midships, and caused her to sink in the deepest part of the channel. Due vigilance, it is alleged, was practised by the schooner to prevent the collision, and that it was occasioned solely by the gross negligence and culpable mismanagement of the steamer.

Pursuant to the warrant issued for the purpose, the steamer was arrested and the claimants appeared and gave a bond for her value in the sum of $8350. In their answer they admit that the state of the wind and the weather at the time

of the collision is correctly described in the libel, but they allege that the proper course of the schooner in coming up the river was northwest by west half west; that instead of pursuing that course she was heading, when first seen by the steamer, diagonally across the river; that the bell of the steamer was immediately rung and her engine stopped, but that it was too late to avoid the collision; that the collision was wholly occasioned by the fault and carelessness of those in charge of the schooner in attempting to cross the bows of the steamer instead of keeping their course, as they were bound to do by the well-known rules of navigation.

I. Testimony was taken on both sides, but the court is not inclined to decide the merits of the controversy, as the clear inference from the certificate of the clerk is, that the whole testimony taken in the District Court is not contained in the copy of the record transmitted to this court. Although the record in that behalf is apparently defective and incomplete, still the court deems it proper to determine some of the questions presented for decision, as otherwise it may hereafter become necessary to send the case back a second time.

Directions were given to the commissioner to whom the cause was referred, in the decretal order, to take proof of the value of the schooner, her cargo, furniture, and fixtures, at the time she collided with the steamer, and also to inquire into the damage which thereby accrued to the libellants, and the cost of the suit, including an allowance for fees to the counsel of the libellants, and to report the same to the court.

Agreeably to those directions the commissioner heard the parties and reported that the libellants were entitled to recover $5000 for the actual value of the schooner at the time she was sunk, $1521.96 for the value of the cargo, $200 for the value of the furniture and fixtures, $450 for the loss of freight, and $100 for profits on the cargo, together with costs of suit, including $500 as an allowance for fees to the counsel of the libellants.

Exceptions were duly taken by the claimants to the report

of the commissioner, setting forth thereto three objections: (1.) That the finding as to the value of the vessel is erroneous. (2.) That the allowance of counsel fees is unauthorized. (3.) That the allowance for profits on the cargo is incorrect. Both parties were heard, and the court sustained the third exception, but overruled the first and second, and confirmed the report, striking out the $100 for profits on the cargo.

II. Suppose the libellants are entitled to recover, still the claimants insist that the rule of damages adopted by the District Court is erroneous.

Owners of ships and vessels are not now liable for any loss, damage, or injury by collision occasioned without their privity or knowledge, beyond the amount of their interest in such ship or vessel and her freight then pending.* Subject to that provision in the act of Congress, the damages which the owner of the injured vessel is entitled to recover are estimated in the same manner as in other suits of like nature for injuries to personal property, and the owner, as the suffering party, is not limited to compensation for the immediate effects of the injury inflicted, but the claim for compensation may extend to loss of freight, necessary expense incurred in making repairs, and unavoidable detention.†

*Restitutio in integrum* is the leading maxim in such cases, and where repairs are practicable the general rule followed by the admiralty courts in such cases is that the damages assessed against the respondent shall be sufficient to restore the injured vessel to the condition in which she was at the time the collision occurred; and in respect to the materials for the repairs the rule is that there shall not, as in insurance cases, be any deduction for the new materials furnished in the place of the old, because the claim of the injured party arises by reason of the wrongful act of the party by whom the damage was occasioned, and the measure of the indem-

---

* 9 Stat. at Large, 635; The Niagara, 21 Howard, 26.

† 1 Parsons on Shipping, 538; Maude & Pollock on Shipping, 411; The Ann Caroline, 2 Wallace, 538; Tindall v. Bell, 11 Meeson & Welsby, 232.

nification is not limited by any contract, but is coextensive with the amount of the damage.*

Such repairs, in consequence of a collision, may enhance the value of the vessel and render her worth more than she was prior to the accident, and in that state of the case the rule in insurance cases is that one-third of the value of the new material is deducted, because the new material is more valuable than the old, but the rule is not so where the repairs are required in consequence of a culpable collision.†

Restitution or compensation is the rule in all cases where repairs are practicable, but if the vessel of the libellants is totally lost, the rule of damage is the market value of the vessel (if the vessel is of a class which has such value) at the time of her destruction.‡

Allowance for freight is made in such a case, reckoning the gross freight less the charges which would necessarily have been incurred in earning the same, and which were saved to the owner by the accident, together with interest on the same from the date of the probable termination of voyage.§

Evidence, however, that the injured vessel is sunk is not of itself sufficient to show that the loss was total, nor is it sufficient to justify the master and owner in abandoning the vessel or the cargo unless it appears that the circumstances were such that the vessel could not be raised and saved, or that the cost of raising and repairing her would exceed or equal her value after the repairs were made.

Experience shows that in many cases where the injured vessel is sunk, especially when the disaster happens in rivers or harbors, the vessel may be raised at moderate expense, and that the cargo, if not perishable, may be saved and re-

---

* Williamson v. Barrett, 13 Howard, 110; The Gazelle, 2 W. Robinson, 281; Sedgwick on Damages (4th ed.), 541; MacLachlan on Shipping, 285.

† The Clyde, Swabey, 24; The Pactolus, Ib. 174; The Catharine, 17 Howard, 170.

‡ The Clyde, Swabey, 23; 1 Parsons on Shipping, 542; The Granite State, 3 Wallace, 310; The Ann Caroline, 2 Id. 538; The Rebecca, Bl. & H. 347; The New Jersey, Olcott, 444.

§ The Canada, Lushington, 586.

stored to the shipper, or carried forward to the port of destination, and the rule in such cases is to award such damages only as will compensate the owners for the loss incurred, which is held to include the expense of raising the vessel and putting her in repair, with a proper allowance for the loss of freight and for the damage to the cargo, and for the detention of the vessel during the time necessary to make the repairs and fit the vessel to resume her voyage.*

Justice as well as sound policy forbids that the owner of a vessel sunk by collision should be allowed to recover the full value of the vessel and cargo except in cases where the entire property is lost by the disaster, which is not true in a case where, by reasonable exertions, the vessel may be raised and the cargo saved by the use of such nautical skill as the owners of vessels usually employ in such emergencies. Owners of vessels seeking redress in such cases must be prepared to show, not only that those in charge of the other vessel were in fault, but that no negligence on their part has increased or aggravated the injury. Damages are awarded in such cases for the injury done to the vessel and cargo by a wrongful act, but if the party suffering the injury to his property will not employ any reasonable measures to stop the progress of the damage, but wilfully and obstinately, or through gross negligence, suffers the damage to augment, it is his own folly, and the law will not afford him any redress for such part of the damage as proceeded directly from his own culpable default.

Persons injured in their property by collision are entitled to full indemnity for their loss, but the respondents are not liable for such damages as might have been reasonably avoided by the exercise of ordinary skill and diligence, after the collision, on the part of those in charge of the injured ship.†

Responsive to these views, the suggestion is, that the libel

---

* Williamson v. Barrett, 13 Howard, 110; Sturgis v. Clough, 1 Wallace, 272.

† The Flying-Fish, B. & Lush. 443; S. C., 3 Moore Privy Council (N. S.) 86; The Lotus, Holt, R. R. 183; The Lena, Ib. 213.

alleges that the schooner and cargo were sunk in such deep water as to make both a total loss, but the insuperable difficulty in the way of that suggestion is, that the allegation of the libel is expressly denied in the answer, and the libellants failed to introduce any proof to support their allegation. Subsequent to the disaster, several witnesses saw the schooner, and they concur that her masts were some eighteen feet out of water, and that she lay with her stem to the west-north-west, in the exact course in which she was steering when she was sunk by the steamer.   Theory of the libellants is, that the vessel and cargo were of no value, but the court cannot adopt that theory in the absence of any proof to warrant the conclusion.*

Decided cases may be found where it is held that the owner of the injured vessel is not bound to raise the vessel in a case where she was sunk by a collision, but it is clear, that the court cannot award damages for a total loss, where it appears probable that the vessel and cargo may be raised without much expense, and restored to their owners.†

III. Due exception was also taken to that part of the report of the commissioner in which he allowed to the libellants, the sum of five hundred dollars for counsel fees, but the District Court overruled the exception and confirmed the report.

Taxable costs are recognized by the Judiciary Act, in several of its sections, as a part of a judgment or decree in a Federal court, but it contains no fee bill, nor does it furnish any express authority for any such taxation.   Costs have usually been allowed to the prevailing party, as incident to the judgment, since the statute 6 Edw. I, c. 1, § 2, and the same rule was acknowledged in the courts of the States, at the time the judicial system of the United States was organized.‡

---

* Miller v. Mariner's Church, 7 Maine, 51; Loker v. Damon, 17 Pickering, 284; Thompson v. Shattuck, 2 Metcalf, 615; Sedgwick on Damages (4th ed.) 105.

† The Columbus, 3 W. Robinson, 158; The Eugenie, 1 Lushington, 139; Lowndes on Collision, 148.

‡ Hathaway v. Roach, 2 Woodbury & Minott, 63; 2 Tidd's Practice, 945;

Circuit Courts, under the Judiciary Act, have original cognizance, concurrent with the courts of the several States, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars, in the cases described in the 11th section of that act.*

Cases of Federal cognizance, commenced in a State court, where the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars, may be removed, under the conditions specified in the 12th section of the act, into the Circuit Courts.†

Such courts also may make and establish all necessary rules for the orderly conducting of business in the said courts, provided such rules are not repugnant to the laws of the United States.‡

Where the plaintiff or petitioner recovers less than five hundred dollars, or the libellant, upon his own appeal, recovers less than three hundred dollars, he shall not be allowed, but, at the discretion of the court, may be adjudged to pay costs. Appeals from the decrees of the District Court to the Circuit Court were allowed by that act, where the matter in dispute exceeded, exclusive of costs, the sum or value of three hundred dollars, and the final judgments rendered in the District Courts might be re-examined in the Circuit Court on writ of error, where the matter in dispute exceeded, exclusive of costs, the sum or value of fifty dollars; and a similar provision is made for the re-examination by this court of the final judgments and decrees of the Circuit Courts, where the matter in dispute, exclusive of costs, exceeds the sum or value of two thousand dollars.

Just damages for delay and single or double costs may be adjudged to the respondent in error, at the discretion of the court, in all cases where the judgment or decree is affirmed.§

Provision is also made that the district attorney shall receive, as compensation for his services, such fees as shall be

The Christina, 8 Jurist, 321; Conklin's Treatise, 426; Laws of the United States Courts, 255.

\* 1 Stat. at Large, 78.     † Ib. 80.     ‡ Ib. 83.     § Ib. 85.

taxed therefor in the respective courts, before which the suits or prosecutions shall be, and the act makes no other provision for his compensation.*

Weighed in the light of these several provisions in the Judiciary Act, the conclusion appears to be clear that Congress intended to allow costs to the prevailing party, as incident to the judgment, as most of the regulations referred to would be meaningless upon any other theory. Concede that to be so, still the inquiry arises, by what rules was the taxation to be regulated, and what were the rates of fees to be allowed; to which inquiries there can be but one answer, unless it be assumed that Congress intended to leave the whole matter to the discretion of the court trying the case, which cannot be admitted. Reject that construction, and the only reasonable one which can be adopted is, that the Federal courts were referred to the regulations upon the subject in the courts of the State, and no doubt is entertained that such was the intention of Congress, as conclusively appears by the terms of the Process Act, which was passed five days after the approval of the Judiciary Act. By that act the modes of process and the rates of fees allowed in the Supreme Courts of the States, were expressly adopted as regulations in that behalf, in common law suits, in the District and Circuit Courts established by the prior act. Rates of fees, in causes of equity and of admiralty and maritime jurisdiction, were also prescribed by that act, and they were therein declared to be the same as are and were last allowed by the States, respectively, in the court exercising supreme jurisdiction in such causes. State forms of writs and executions were also adopted by the same act, and the rates of fees and the forms and modes of process ever after remained the same, except so far as they have been changed by subsequent legislation, or by the rules ordained by the Supreme Court. Temporary though the act was, still it was of sufficient duration to put the new system in complete operation.†

Subsequent to the passage of that act, the costs taxed in

---

* 1 Stat. at Large, 93.                    † Ib. 123; Ib. 191.

the Circuit and District Courts were the same as were allowed at that time in the courts of the State, including such matters as the travel and attendance of the parties, fees for copies of the case, and abstracts for the hearing, compensation for the services of referees, auditors, masters, and assessors, and many other matters not embraced in the fee bills, since passed by Congress.*

Most of the provisions of that act were incorporated into the second section of the act of the 8th of May, 1792, but the particular regulation, adopting the State fee bill as the rate of fees in the Circuit and District Courts, was not reproduced in that section, as that fee bill had already been adopted by the Federal courts.†

· Since that time, costs in the Circuit and District Courts, held in the old States, have been taxed under that regulation as adopted by that act, except so far as the rates of fees have been changed by subsequent legislation.‡

Congress, by the act of the 1st of March, 1793, regulated more specifically the taxation of costs in admiralty proceedings in the District Courts.§

Fees of the attorney and counsellor were prescribed by the 1st section of the act. They were a stated fee of three dollars for drawing and exhibiting the libel, claim, or answer in each cause; three dollars for drawing interrogatories, and three dollars for all other services in any one cause. Nine dollars only could be taxed for the services of an attorney or counsellor, but the 4th section of the act provided, that there be allowed and taxed, in the Federal courts, in favor of the parties obtaining judgments therein, such compensation for their travel and attendance, and for attorney and counsellor's fees, except in the District Courts, in causes of admiralty and maritime jurisdiction, as are allowed in the Supreme or

---

* Crosby v. Folger, 1 Sumner, 514; Brown v. Stearns, 13 Massachusetts, 536.

† Ibid. 276; Hathaway v. Roach, 2 Woodbury & Minott, 68; Hovey v. Stevens, 3 Id. 17.

‡ Whipple v. Cotton, 3 Story, 84.

§ 1 Stat. at Large, 332.

Superior Courts of the respective States. Passed to continue in force only for one year, and, from thence, until the end of the next session of Congress thereafter, it was suffered to expire, but it was renewed by the act of the 31st of March, 1796, and was continued in force two years longer, and to the end of the next session of Congress.*

Detailed provision was made by the subsequent act of the 28th of February, 1799, for compensation to marshals, clerks, district attorneys, jurors, witnesses, and criers, but the special provision allowing counsel fees was dropped.†

Even while it remained in force, it did not authorize such an allowance in a case like the present, as cases of admiralty and maritime jurisdiction in the District Courts were expressly excepted from the operation of the provision. Ordinary costs in admiralty suits were doubtless taxed under that act, as if it was in force long after it had expired, but it never furnished any authority to charge counsel fees in the District Courts; but if it did, and if it had not expired, it would be repealed by the present law.

Fees and costs, allowed to the officers therein named, are now regulated by the act of the 26th of February, 1853, which provides, in its 1st section, that in lieu of the compensation now allowed by law to attorneys, solicitors, proctors, district attorneys, clerks, marshals, witnesses, jurors, commissioners, and printers, the following and no other compensation shall be allowed.

Attorneys, solicitors, and proctors may charge their clients reasonably for their services, in addition to the taxable costs, but nothing can be taxed as cost against the opposite party, as an incident to the judgment, for their services, except the costs and fees therein described and enumerated.‡ They may tax a docket fee of twenty dollars on a final hearing in admiralty, if the libellant recovers fifty dollars, but if he recovers less than fifty dollars, the docket fee of the proctor shall be but ten dollars.§

---

* 1 Stat. at Large, 453.      † Ib. 624.      ‡ 10 Stat. at Large, 161.
§ The Sloop Canton, 21 Law Reporter, 473; The Liverpool Packet, 2 Sprague 37; The Conestoga, 2 Wallace, Jr., 116.

Reference is made to two cases where counsel fees were allowed, but it is a sufficient answer to those cases to say, that they were decided before the act of Congress, under consideration, was passed.   They do not, therefore, furnish the rule of decision in the case before the court.

DECREE REVERSED.