## O'Neil *v.* The I. M. North.

(*District Court, S. D. New York.* December 21, 1888.)

Collision—Tug Landing Tow—Negligence—Damages.

 The tug N., in landing a tow of nine canal-boats at the dock at Port Ewen, North river, through miscalculation and the kinking of the tow upon a slack hawser, ran the libelant's canal-boat upon the corner of a gap in the dock, bringing the boat to a dead stand, causing her damage. Though the boat was old, and not very strong about the bows, the blow being much more violent than the ordinary contacts of navigation, *held,* that she was not unseaworthy, nor so weak as to require notice of weakness to the tug; that notice, if given, could not have affected her handling; and that she was therefore entitled to full damages.

In Admiralty. Libel for damages.

Libel by Kate O'Neil against the tug North for negligence in running a canal-boat against the corner of the dock at Port Ewen, on the North river, when landing a tow of canal-boats.

*Hyland & Zabriskie,* for libelant.

*Robert D. Benedict,* for claimants.

Brown, J. I am satisfied that the libelant's witnesses are mistaken in their estimate of the speed of the tow when near the dock at Port Ewen. Considering all the circumstances, the most probable cause of the collision of the libelant's boat with the corner of the gap in the dock is miscalculation on the part of the captain of the tug in approaching too near the line of the dock, having reference to the fact that there were four boats in the second tier of the tow, while there were only three boats in the front tier, and that the second tier, with the libelant's boat on the port side, projected more than the captain of the tug had taken account of. The libelant's testimony seems to confirm that of the respondents, that the hawser was slack, and that therefore some kinking of the tow, more or less, was unavoidable. Nothing is shown, however, in the circumstances, of an unusual or unexpected character. The liability of the tow to sheer and kink either way was fully known. The tug was bound, therefore, to make all necessary allowance for this liability in approaching the dock on a slack hawser; and, as the canal-boat was not in fault, the responsibility for the blow rests on the tug.

The canal-boat was 14 years old. The evidence shows clearly that the wood-work about her bow was not very strong. The claimants contend, and some of their witnesses testify, that she was not fit for the ordinary contacts of navigation; others of their witnesses hesitate on that point. I am not entirely satisfied in that respect; and, looking at the other circumstances, I give the libelant the benefit of the doubt; for the blow must have been a very trying one, from its place near the stem of the square-headed boat. Striking the corner of the gap in that way, she could not turn to the right or left, but was necessarily brought to a dead stop. The lines of the other boats were broken; and with nearly 200 tons of coal on board, and other boats pushing up from behind, even

though her rate may not have been more than one mile an hour, the blow was not one of those ordinary contacts that boats are expected to encounter without injury. The fact that she did not sink at once, and that the bow was only so little broken that it could be wedged up so as to enable her to complete the voyage, make strongly against the contention that her beams were as weak as some of the claimants' witnesses suppose. Considering that she was so heavily loaded when brought to a dead stand against such a corner, and that the lines attached to her were parted, there seems to me little doubt that boats in the ordinary condition of those usually towed in this business would have been injured substantially the same as this one, and so as to require substantially the same repairs; and that this boat was not so nearly in an unseaworthy condition, or so specially liable to injury by the ordinary contacts of navigation, as to make it incumbent on the captain to give notice of her weakness, so as to demand special care by the tug in handling; and, if such notice had been given, the evidence does not indicate that that would have made any difference in the handling of the tow. The cases of *The Syracuse,* 18 Fed. Rep. 828; *The Reba,* 22 Fed. Rep. 546; and *The N. B. Starbuck,* 29 Fed. Rep. 797, are not, therefore, applicable here; but rather those of *The Granite State,* 3 Wall. 310; *The Baltimore,* 8 Wall. 386; and *The Howard,* 30 Fed. Rep. 280. As in the case last cited, however, damages can only be allowed for repair in a manner corresponding with the previous condition of the boat; not the cost of building a new stem and new bow, since the evidence shows that that was not necessary.

The libelant at the time offered to take $125. The claimants expected to repair her for a much less sum; but it appeared that this did not include the repair of the stem, which I think the boat was entitled to. Nor does it appear that the claimants had taken into account any allowance for the few days' detention, for which the libelant would have been entitled to compensation, if there was employment for the boat at that time. I think $125 is probably all that the libelant is entitled to; but, as the testimony on that subject was not fully gone into at the trial, either side can take a reference with respect to damages, if desired, paying the costs of the reference if it obtains a less favorable result than that sum.