## STRECKFUS STEAMBOAT LINE v. UNITED STATES.

Circuit Court of Appeals, Fifth Circuit. June 29, 1928.

No. 5232.

1. **Collision** ⬚134—Vessel owner in collision case may recover amount necessary to restore vessel to condition before accident, whether repairs are made or not.

Owner of vessel in collision case may recover as damages an amount necessary to restore vessel to her condition before accident, whether repairs are actually made or not, if value of vessel is thereby decreased.

2. **Collision** ⬚134—Where repairs to cylinder timber after collision restored vessel to substantially original condition, owner could not recover estimated cost of new timber.

Where repairs to cylinder timber of vessel after collision enabled vessel to operate daily for 38 months, repairs were permanent, and restored boat to substantially same condition she was in before collision, and owner could not recover estimated cost of installing new cylinder timber, but could only recover cost of repairs.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Louis H. Burns, Judge.

Libel by the Streckfus Steamboat Line against the United States. From the judgment, libelant appeals. Affirmed.

John D. Grace, M. A. Grace, and Edwin H. Grace, all of New Orleans, La. (John D., M. A. & Edwin H. Grace, of New Orleans, La., on the brief), for appellant.

Henry P. Dart, Jr., and H. Grady Price, both of New Orleans, La. (Dart & Dart, of New Orleans, La., on the brief), for the United States.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. On April 7, 1921, a collision occurred in the port of New Orleans between the steamboat Capitol, owned by appellant, and the steam tug Gwa-

lia, owned by the United States, and operated in the Mississippi-Warrior service. The Capitol is a large, stern wheel, river steamboat, approximately 756 feet long and 50 feet beam, and was engaged in carrying excursionists about the harbor of New Orleans in the winter season, and in the same service on the upper Mississippi in the vicinity of St. Louis during the summer. As the result of the collision the paddle wheel of the Capitol was badly damaged and the after end of her port cylinder timber was broken off.

A libel was filed against the United States November 22, 1921, and in this a claim was made for $1,302.35 for permanent repairs of the wheel and temporary repairs to the cylinder timber, $374.15 demurrage for the loss of two trips, and $5,650 for the estimated cost of installing a new cylinder timber.

On May 15, 1925, an interlocutory decree was entered in favor of libelant, fixing responsibility for the collision on the United States, and the case was referred to a commissioner to ascertain the damages. After that, on June 7, 1926, a supplemental libel was filed praying for an increased recovery of $9,197.30, instead of $7,376.50, as prayed for in the original libel. The commissioner heard the evidence, and in due course reported, recommending an award of $1,684.51, which included all the costs of the repairs initially made and demurrage for two days' delay. Exceptions to the report were overruled by the District Court, and a decree was entered in the amount recommended by the commissioner. From that judgment this appeal is prosecuted.

[1] The maxim "Restitutio in integrum," applies in awarding damages in collision cases, and there is no doubt that the owner of a vessel may recover as damages an amount necessary to restore her to her condition before the accident, whether the repairs are actually made or not, if the value of the vessel is thereby decreased. But the only question presented here is whether the repairs made to the cylinder timber were merely temporary or in fact permanent.

The record is not quite clear as to the damages of the cylinder timber, but there is evidence to support the following conclusions:

The cylinder timbers of the Capitol were made of Oregon pine, of the dimensions of about 60 feet long, 10 inches wide, and 34 inches high. The engines of the boat rest on the inboard ends of the cylinder timbers, and the paddle wheel is supported by the outboard ends; the shaft of the wheel revolving in journal boxes fixed on the cylinder timbers about 11 feet from the hull of the boat, with the cylinder timbers extending aft approximately the same distance. Two fore and aft hog chains are fastened to the outer ends of the cylinder timbers, and the journal boxes of the wheel rest between these hog chains. The break occurred aft of the journal box and between the hog chains, about 5 feet from the outer end.

Repairs were made promptly after the collision, and were completed on April 9th, within two days. The wheel was restored to the same condition as before the accident, and the cylinder timber was repaired by scarfing the broken end and splicing in another piece of Oregon pine, with a piece of channel iron underneath, and a steel plate about 8 feet long on one side, covering the splice. After these repairs the Capitol continued in the same business for some 38 months, with no other repairs to the damaged parts. At the end of this period she was taken to Paducah, Ky., and, without notice to appellee, was given a complete overhauling at a total cost of $18,325.31. Both cylinder timbers were removed and replaced with steel members.

To show the cost of making permanent repairs to the cylinder timber, appellant relies mainly on an estimate and bid made by the Johnson Iron Works, of New Orleans, on April 19, 1921, as follows: Repairs to the paddle wheel, $1,100; temporary repairs to the cylinder timber, $140; permanent repairs to the cylinder timber, including dismantling the main engine, hog chains, etc., $5,650—and fixing the time for doing the work at six days. There also appears in the record another estimate and bid made by the Jahncke Dry Dock Company of New Orleans, which was solicited by telephone on April 15, 1922, and made the same day, for repairs of the wheel and the replacing of the cylinder timber for $5,980, without specifying the apportionment of the costs of repairs, the work to be completed in 10 days. As the work had already been completed when these bids were made, it is evident that they were solicited merely for the purpose of using them in evidence, and with no intention of letting the work, and they have very little, if any, probative value.

[2] If appellant had thought it necessary to replace the damaged cylinder timber with a new one, that work could have been done at New Orleans within 10 days at the most, and in fairness to appellee it should have been done then. We agree with the District Court that the repairs made, which enabled the Capitol to operate daily for 38 months, cannot be considered as temporary, and that in fact

they restored the boat to substantially the same condition she was in before the collision.

Affirmed.