BECK et al. v. THE VIZCAYA et al.

No. 45 of 1944, Admiralty.

United States District Court
E. D. Pennsylvania.

Oct. 7, 1949.

---

Philadelphia, Pennsylvania, a number of the bags were torn and "slack", i. e., variously short in content, these being separable, on visual inspection, in two groups according to the two types of injuries which loosed their contents. This Court held the claimant-respondent answerable for but one of the injuries and so for the loss of contents from the bags in its group, and, accordingly, referred the computation of damages to the Commissioner, The Vizcaya, 63 F.Supp. 898.

Although the Report filed by the Commissioner makes an award to the libellants, the amount, which is less than all of the loss, did not meet their satisfaction and they have excepted on two principal, albeit alternative, grounds. On the one hand, they contend that under the decision in Schnell v. The Vallescura, 1934, 293 U.S. 296, 55 S. Ct. 194, 79 L.Ed. 373, they should recover the entire loss, since the claimant-respondent failed to establish the proportion which is its liability. On the other hand, they contend that the claimant-respondent's surveyor had the authority to, and did, make an agreement settling the proportion of loss in the shipment coming within the category for which it is responsible.

. It is undisputed that of the whole shipment, 291 of the bags were discharged in bad order and a portion of the contents of each lost; of these, 183 were bags of almonds, of different grades, and 108 were of filberts. The Commissioner found, however, and this also is uncontradicted, that only seventy-five of the total number of slack bags were sorted by the parties' surveyors with reference to type of injury. Of these, forty-seven evidenced the kind of damage for which, it has been determined, the claimant-respondent should pay. The award to the libellants, as determined by the Commissioner, is limited, insofar as the exceptions herein are concerned, to the shortages in the forty-seven bags.

■ Treating the Report of the Commissioner as presumptively correct, the Court does not find therein error justifying the exceptions taken. Admiralty Rule 43½, 28 U.S.C.A.; Zeller Marine Corp. v. Nessa Corp., 2 Cir., 1948, 166 F.2d 32, 34; cf.

Thomas E. Byrne, Jr., of Krusen, Evans & Shaw, Philadelphia, Pa., for plaintiffs.

Joseph W. Henderson, of Rawle & Henderson, Philadelphia, Pa., for defendants.

KALODNER, Circuit Judge.

The libellants were the consignees of a cargo of bags of almonds and filberts shipped aboard the claimant-respondent's vessel, the "S. S. Vizcaya". On discharge at

Ozanic v. United States, 2 Cir., 1948, 165 F.2d 738, 742.

■ The claimant-respondent does not deny at this stage, nor apparently does it admit, that there may have been more of the bags properly includable in the category within its liability. However, the evidence received by the Commissioner, which the libellants do not contravene, discloses that by the time the claimant-respondent's surveyor arrived at the pier for the joint survey, some of the cargo had already been discharged from the holds of the vessel and an agent of the libellants had caused a good deal of it to be loaded into railroad cars, some of which had been moved away. When the matter of this portion of the cargo was raised by the claimant-respondent's surveyor, the libellant's surveyor stated that he thought the expense too great to return the cars and unload them for the purpose of inspection. They agreed, however, that there was sufficient of the shipment remaining, more than half of it in the holds of the vessel, to fairly represent the condition of the bags with respect to the damage. Accordingly, they directed that the damaged bags be sorted from among those left on the pier and in the vessel. This yielded the seventy-five bags referred to above; but it may be noted that the libellants' agent had withheld from the railroad cars a number of the more badly damaged bags for inspection and, apparently, these were included in the count of seventy-five: at least, that is the inference of the Commissioner, and it is not now attacked.

It should be evident that under the holding of Schnell v. The Vallescura, supra, the claimant-respondent would not be liable for the entire shortage in the 291 slack bags, since it had segregated its responsibility with respect to at least seventy-five of them.

As to the remainder, the answer is equally clear. The action of the libellants' agent in proceeding to load the damaged bags, along with the good, into the railroad cars, without either holding them for the anticipated arrival of the surveyors or making a tally to show the necessary information, effectively prevented the claimant-respondent from satisfying any duty which the Vallescura case may be said, *arguendo,* to have imposed upon it. In this light, reason rebels against application of the rule there announced in such manner that a premium must attach to the promptness with which a consignee can spirit away his damaged cargo. Accordingly, with respect to the bad order bags loaded into the railroad cars, the claimant-respondent cannot be held to have the burden of proving how much of the loss was, or was not, of the category within its liability.

■ Nevertheless, the libellants contend that the claimant-respondent's surveyor made a binding agreement pursuant to which the proportion of damaged bags in each category among the bags examined would be deemed the proportion in each category among all the damaged bags, including those not examined.[1] The Commissioner, however, determined that the record did not disclose the necessary authority in the claimant-respondent's surveyor for such an agreement.

The record does, indeed, fall short of establishing the authority in the claimant-respondent's surveyor to make an agreement binding on his principal of the kind here alleged. While the surveyor testified that he had authority to do whatever he did, his understanding must be viewed in the light of his uncontradicted testimony that his assignment was simply "to survey" and to take care of the salvage. And if there is a custom whereby surveyors may bind their principals in the manner alleged, it has not been shown.

■ Moreover, there is a lack of evidence, significant under the circumstances, that the libellants' surveyor and agent intended to enter, or believed they were en-

1. Thus, of the seventy-five bags examined, fifty-two were almonds, of which thirty-eight, or 73% belonged to the category for which the claimant-respondent is liable; and twenty-three were filberts, of which nine, or 39%, were in the same category. The libellants assert, therefore, according to the alleged agreement, that 73% of the 183 damaged almond bags, and 39% of the 108 damaged filbert bags, should be put in the category for which the claimant-respondent is liable.

tering, into a contract. Rather, on the record, it would appear that insofar as the question here is concerned, the two surveyors were mutually satisfied, i. e., in agreement, in their independent judgment, that there was sufficient cargo remaining in the vessel and on the pier to fairly represent the damage to the bags. Similarly they agreed that there were two kinds of damage to the bags. But it does not necessarily follow that, because the judgment of the surveyors coincided, their principals became bound not to contest the issue.

It may be conceded, of course, that the agreement in judgment of the two surveyors, in the field of their expertise, would carry persuasive weight with their principals and with the Court. Nevertheless, in litigation their judgment is only evidence, unless there is superimposed a different character upon it. It cannot fill the gap in the actual facts unless it is justifiable, nor can it contravene the facts, without more. The instant case serves to illustrate. The claimant-respondent's surveyor testified that the percentage-proportion formula had nothing to do with the application of professional experience in appraising cargoes from samples, and merely amounted to a physical fact concerning the slack bags examined. Further, the "sampling" was not supported as fair. Not all the bags were examined, and samples selected, but only one-fourth of them. The distribution of the two types of damage among those bags examined would depend upon their location in the stow and the consistency of conditions in the holds of the vessel, since the damage within the claimant-respondent's liability is limited to those bags having come into contact with the skin and frames of the ship. As to these conditions, as well as to the condition of the unexamined bags, the claimant-respondent's surveyor said he had no knowledge. Consequently, the distribution of the damage among all the slack bags was speculative. It may be noted, in verification, that although more than half the cargo remained in the vessel at the time of the surveyors' visit, less than seventy-five of the 291 slack bags came from that portion of the shipment. Thus, while Rhadamanthine accuracy is not expected of "sampling", the basis upon which such evidence becomes probative is absent here.

In any event, it is not the number of bags that constitutes the critical measure of the claimant-respondent's pecuniary liability; it is the loss of contents, cast in terms of pounds. Yet, the formula for which the libellants are the proponents fails to disclose any agreeable relation between the torn bags and their loss of contents. Indeed, the surveyor testified that it was devised solely with respect to the bags damaged, and not to their contents. And the difficulties in applying the formula are multiplied by the fact that the shipment consisted of four qualities of almonds, and filberts, each of a different market value.

Accordingly, for the reasons stated, the exceptions to the Commissioner's Report are overruled. An order may be entered consistent herewith.