**John S. COTTLE, Plaintiff, Appellee,**

v.

**Barry GALLUP, d/b/a Point Judith Engine & Supply Co., Defendant, Appellant.**

**No. 7623.**

United States Court of Appeals, First Circuit.

Oct. 2, 1970.

James M. Jerue, Providence, R.I., with whom Beals & Jerue, Providence, R.I., was on brief, for defendant, appellant.

Bardyl Rifat Tirana, Washington, D. C., with whom Bruce G. Sundlun and Amram, Hahn & Sundlun, Washington, D. C., were on brief, for plaintiff, appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

## PER CURIAM.

The plaintiff employed the defendant to install a new engine in his fishing vessel. The day after the work was completed and the vessel had passed its trials plaintiff took a short pleasure trip. The trip was interrupted when it was discovered that the engine room was flooding. The boat was beached, but not before cold salt water had, to use a medical term, "insulted" the hot, running engine, causing it to lock, with substantial damage to the engine as well as the usual damage to electrical parts, etc., resulting from a sustained immersion. Upon floating, it was found that the flooding had resulted from a hose defendant had installed, which had parted. According to plaintiff's expert, whom the court credited, this was due to insufficient bracing. Plaintiff employed defendant to remove the engine and install a new one at an agreed figure, plus a turn-in of the old engine. He then sued in the district court for breach of a maritime contract, to recover his second cash payment as well as damages for loss of use of the vessel for ten weeks during the heavy summer fishing season. The court found for the plaintiff, in the total amount of $21,120, plus interest, and defendant appeals.

We need not pause over the issue of liability. Defendant complains because the court believed plaintiff's expert that the installation had been defective, rather than defendant's experts, a matter clearly for the trier of fact. The issue of damages is more troublesome. Essentially, defendant contends that plaintiff should have had the motor repaired rather than replaced, allegedly at less cost, and which on defendant's testimony would have taken one week rather than the ten required to obtain another. Many marine engines such as this one are not readily available in stock. Defendant further contends that he is not chargeable with the loss of the vessel's profits, and that in any event, the court erred in overstating the loss.

It was, of course, incumbent upon plaintiff to minimize the damages. On the record, however, the court did not err in concluding that the engine could not be repaired to its former status. Additionally important would be the loss of the manufacturer's warranty. Where the plaintiff had contracted for a new engine, in perfect, warranted condition, he was not obliged to accept a substantially inferior one plus reimbursement for the difference in value between such an engine and a new one. The collision cases support plaintiff's view. The Baltimore, 1869, 8 Wall. 377, 19 L.Ed. 463; The Granite State, 1865, 3 Wall. 310, 18 L.Ed. 179. And see Zeller Marine Corp. v. Nessa Corp., 2 Cir., 1948, 166 F.2d 32, where recovery for damage to a ship caused by a stevedoring company was limited to repair, rather than more expensive replacement, only on the belief that repair did make the ship as "practically serviceable," as before, or "not * * * essentially depreciated in her market value, or inferior in practical use." We see no reason why the rule should be less for breach of contract.

Nor do we agree with defendant's claim that the loss of use of the vessel was not properly chargeable to him. In our opinion the loss of normal profits of the lost fishing season would

meet even defendant's strict test of what "would arise naturally and according to the usual course of things from the breach, and as the parties contemplated when the contract was made as the probable result of its breach." *Cf.* City of Miami v. Western Shipping & Trading Co., 5 Cir., 1956, 232 F.2d 847. This meant the net profits for the period in question. Defendant's contention that the measure of damages is, in any event, only 10/52's of plaintiff's annual net earnings is patently frivolous.

We do pause over the court's finding that in the lost ten weeks plaintiff would have executed ten trips. It is true that plaintiff testified that a trip takes about a week. He also testified, however, and his accountant's figures are consistent therewith, that, including turnaround time, the period might be longer. We have reviewed the record, including plaintiff's proffered answer to the fact that in no ten week period in the past he had completed more than eight trips, and conclude that eight was the maximum justifiable finding on which to base damages. The judgment must be reduced to recognize this change, and is otherwise affirmed. Costs to appellee.