**DOMINICAN MARITIME, S.A., et al.,**
**Plaintiffs, Appellees,**

v.

**The M/V INAGUA BEACH, etc., et al.,**
**Defendants, Appellees,**

**West India Shipping Co., Inc.,**
**Defendant, Appellant.**

**No. 77–1271.**

United States Court of Appeals,
First Circuit.

Argued Feb. 10, 1978.

Decided March 22, 1978.

Paul E. Calvesbert, Hato Rey, P. R., with whom Jose Antonio Fuste and Jimenez & Fuste, Hato Rey, P. R., were on brief, for defendant, appellant.

Roberto Boneta, Hato Rey, P. R., with whom Francis & Doval, Hato Rey, P. R., was on brief, for plaintiffs, appellees.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

In April, 1974, a collision occurred between two vessels, the SANDRA belonging to plaintiff-appellee Dominican Maritime, S. A., and the INAGUA BEACH belonging to defendant-appellant West India Shipping Co., Inc. In the subsequent lawsuit in district court, the defendant admitted liability for the accident and a trial was held to determine the appropriate damages. The district court entered a judgment of $76,-123.23 and defendant appeals the award.

Defendant argues, first, that the district court erred in including in the award temporary repairs to facilitate the use of the damaged vessel before major repairs could be undertaken and subsequent repairs accomplished after the expected major repairs were completed. The defendant does not dispute the cost of the major repairs, the need for which was determined by a joint survey attended by representatives of both parties. However, it vigorously disputes these additional repairs which were not brought to its attention until this suit was initiated. Since the SANDRA was lost at sea prior to the commencement of this action, defendant notes that it never had the opportunity to examine the vessel to determine whether these temporary and subsequent repairs were necessary or whether they were ever carried out.

It is difficult not to be sympathetic to defendant's protests. However, it has not provided us with any law or authority that requires a joint survey or pre-suit notice of repair costs before damages can be awarded in a case of collision between two vessels. Plaintiff's witness, a marine surveyor, testified to the need for the disputed repairs and that they were carried out. Despite cross-examination by defendant, the district court accepted his testimony and included the cost of the temporary and subsequent repairs in defendant's liability. We cannot say that the district court's conclusion as to the need for these repairs was clearly erroneous.

Defendant's second contention is that the district court should not have included $14,-250, for depreciation of the vessel in its calculation of damages. Plaintiff rebuts this argument by pointing to evidence that the repair of the vessel caused " 'hard spots' therefore decreasing from the general soundness of the hull" and involved the use of "doublers" which detracted from the SANDRA's "general appearance as a clean and sound vessel".

The law relating to depreciation damages after the repair of a vessel injured in a collision is that, "An owner whose boat is damaged by the negligence of another is entitled to have his boat repaired in a way which will not leave her essentially depreciated in her market value, or inferior for practical use." *Petition of Metropolitan Sand & Gravel Corp.,* 170 F.Supp. 675, 678 (E.D.N.Y.1958). However, the owner is not entitled to recover depreciation in market value simply because prospective buyers may not bid as highly for a vessel that has been in collision or because there are minor cosmetic defects that distinguish the vessel from its condition before the accident occurred. If the repaired vessel is as strong, serviceable, and seaworthy as it was before the accident, a depreciation award in addition to the cost of the repairs of the vessel is unjustified. *See The Loch Trool,* 150 F. 429 (N.D.Cal.1907); *Zeller Marine Corp. v. Nessa Corp.,* 166 F.2d 32, 34 (2d Cir. 1948).

From the record before us, it is unclear whether the SANDRA was restored in

all but cosmetic defects or whether her efficiency or useful life had been appreciably decreased. It appears that both cosmetic and functional defects may have been included in determining the extent of her depreciation.* Therefore, we remand the case to the district court for a re-calculation of the depreciation award based on evidence of functional defects, remaining after the completion of the repairs, that directly affected the SANDRA's market value.

*Remanded.*

---

* Plaintiff's witness, James Wingate, testified that "structurally you are dealing now with a vessel that has a section that is not riveted and not functioning as a riveted section as the whole vessel should be. In other words, you have a possible hard spot where the rivet is not giving to the forces imposed upon it by the ocean in that section because there are not any rivets to give, so she is not stressing and straining in the sense uniformally as she did prior."

While this may indicate functional defects that affect the vessel's market value, the witness also testified, "I had pretty much the same opinion about the vessel after she was repaired as prior to the repairs simply because the ves-

sel had a value. We did a little more work in the shipyards possibly on the engines that make me know that she is worth more. But I wouldn't change my opinion as to her value other than perhaps the fact that now she was partially welded and partially riveted throughout which may change, which changes the cosmetics to some degree, the sailability [sic] of the vessel."

Moreover, plaintiff's attorney characterized Mr. Wingate's testimony as stating, "He . . . said there was a difference in appearance and we are trying to determine whether that difference in appearance has anything to do with its value."