ANTHONY O'BOYLE, Inc., as owner of
THE Barge RUSSELL NO. 21,
Libelant,

v.

THE Tug ROBIN HOOD and THE Tug
DYNAMIC, Respondents.

No. 18212.

United States District Court
E. D. New York.

May 13, 1955.

Macklin, Speer, Hanan & McKernan,
New York City, Proctors for Libelant,
Gerald J. McKernan and James N. Allan,
New York City, of counsel.

Alexander & Ash, New York City,
Proctors for Tug Robin Hood, Sidney
A. Schwartz, New York City, advocate.

. Purdy, Lamb & Catoggio, New York
City, Proctors for Tug Dynamic, Vincent
A. Catoggio, New York City, advocate.

. ABRUZZO, District Judge.

On November 13, 1951, an interlocutory decree was entered holding both respondents, the tug Robin Hood and Dynamic, equally responsible for damages sustained by the steel tank barge, Russell No. 21, in a collision that occurred on August 24, 1944, more than ten years ago. There had been a delay of seven years from the date of the collision to the trial of the libel.

The Commissioner appointed by the Court held hearings on August 25, 1953, September 22, 1954, September 30, 1954, October 8, 1954, October 22, 1954, October 29, 1954, and November 19, 1954.

His report was filed on February 1, 1955. It appears that there had been a delay from the entry of the decree on November 19, 1951, until August 25, 1953, before the first hearing was held, a matter of almost two years. The Commissioner recommended that the libelant recover from the respondents a total of $4,779 made up of the following items:

1. The cost of temporary repairs — $ 920.41
2. Loss of earnings as demurrage — $3,750.00
3. Surveyor's fee of — $ 25.00
4. A towage charge of — $ 83.59

The libelant claimed to be entitled to an additional allowance of $5,160 for depreciation in the market value of the barge and $732, the cost for gas freeing, steam cleaning, rendering a gas-free certificate, and dry-docking the barge in order to survey her. The respondents except to the allowance of $3,750 for demurrage and request that the libelant be denied interest and costs of the reference be assessed against the libelant. It might be appropriate to set forth some of the relevant facts.

Libelant's damaged barge at the time of the collision was loaded. She, nevertheless, after the collision delivered her cargo. She was taken out of operation on September 3, 1944, and did not resume operations until September 18, 1944, 15 days later. A survey was held on August 24, 1944, but the appraisal included the damages sustained by the libelant's barge in three prior collisions. Libelant is only entitled to damages, of course, as the result of the damages sustained in this particular collision. The survey called for certain work of repair to be done in the sum of $5,160 and that sum included $732 for gas freeing and steam cleaning the barge. The proof before the Commissioner indicates that the libelant made temporary repairs in the sum of $921.41, and the barge thereupon entered into service and was in service continuously until October 24, 1945, when she was lost off the New Jersey coast. This loss is not connected in any wise with the action at bar.

The Commissioner in disallowing the recovery of $5,160 determined that the temporary repairs made the barge sound and seaworthy. The libelant on the other hand claims that the reason temporary repairs were made was that war conditions prevailed in 1944, making it difficult to obtain steel which in turn made it impossible to make the repairs called for by the survey.

It appears from the evidence that the libelant's barge was classified by the American Bureau as a classed barge and that after the temporary repairs were made she received a certificate from this Bureau approving the barge for seaworthiness and permitting her to operate.

With respect to all the exceptions to the Commissioner's report, there is a great deal of contradictory testimony and it will be, therefore, necessary to take up each item separately.

■■ The most important question is the exception by the libelant to the disallowance by the Commissioner of the cost of repairs in the survey amounting to $5,160. The Commissioner properly disallowed this item. The temporary repairs, it was proven, made the barge seaworthy and as serviceable as she was before the collision. A certificate to that effect was issued and for 14 months the barge plied her trade continuously. In Zeller Marine Corporation v. Nessa Corporation, 2 Cir., 166 F.2d 32, the same point arose and it was there stated that where an injury can be perfectly repaired for all practical purposes at slight expense the court must hesitate in allowing damages on the basis of repairs not made. It is the customary obligation of the injured party to minimize damages. See also Streckfus Steamboat Line v. United States, 5 Cir., 27 F.2d 251, 252; The Loch Trool, D.C.N.D.Cal., 150 F. 429, 431; Socony No. 21, D.C.S.D. N.Y., 1934 A.M.C. 136.

■ The libelant is entitled to an award for gas freeing and steam clean-

ing the barge. The gas freeing and steam cleaning was made to determine the damages sustained by reason of four collisions, including the one which gave rise to this suit. In colloquy before the Commissioner (Tr. 387–388), libelant's proctors admitted that only one-quarter of this charge was applicable to the instant suit. I, therefore, find that the libelant is entitled to an additional award of $183, one-fourth of its bill of $732, for gas freeing, steam cleaning and rendering a gas-free certificate.

Libelant's Exhibit No. 11, dated October, 1954, is the damage report of the tug Russell No. 21. This is libelant's own exhibit, and the record of the demurrage of the Russell No. 21 is entered upon this envelope to the extent of $900. The libelant should be bound by its own records. Respondent Robin Hood's Exhibit 2 is a bill sent by the libelant to the respondent Robin Hood dated October 7, 1944, in which the libelant claimed demurrage in the amount of $900. This corroborates libelant's Exhibit 11. Respondent Dynamic's Exhibit 5 is a letter dated December 16, 1952, sent by the proctors for the libelant to the proctors for the Dynamic submitting an item of damage wherein a claim is made for 11 days' demurrage at $150 a day for a total of $1,650. Libelant has the burden of proof of its damages and the proof clearly indicates that the Commissioner should have allowed only $900.

Costs are discretionary and a district court has the power to reduce the award of costs. The Pocahontas, 2 Cir., 111 F.2d 451. Allowance of interest is also discretionary. O'Donnell Transp. Co. v. City of New York, 2 Cir., 215 F. 2d 92.

Costs should be assessed equally, one-third to the libelant and one-third to each of the respondents, due to the fact that the libelant was very dilatory in, first, instituting its action and, secondly, after the Commissioner was appointed, in delaying the hearings before him.

Interest should be allowed to the libelant. It would ordinarily take two and a half years to reach a case for trial and a reference should normally be completed within six months after the entry of an interlocutory decree. Because of the reasons set forth in the assessment of costs interest is allowed to the libelant for a period of three years from the date of the collision.

The items of damage that should be allowed are as follows:

| | | |
|---|---|---:|
| 1. | Cost of temporary repairs | $ 920.41 |
| 2. | Loss of earnings as demurrage | 900.00 |
| 3. | Gas freeing and steam cleaning as the result of this particular collision | 183.00 |
| 4. | Surveyor's fee of | 25.00 |
| 5. | Towage charge | 83.59 |
| | | $2,112.00 |

The libelant is, therefore, entitled to $2,112 plus interest for three years.

Submit order in conformity with this opinion on two days' notice.